WALKER BROS., BANKERS, v. INTERMOUNTAIN MILLING CO. et al.

No. 4241. Decided May 23, 1925. (237 P. 228.)

1. APPEAL AND ERROR—NOTICE OF APPEAL FROM DISALLOWANCE OF CLAIM NEED BE SERVED ON RECEIVER ONLY. Under Comp. Laws 1917, § 6768, relating to powers of receiver, in receivership proceedings, notice of appeal from disallowance of claim need

Headnote 1.  3 C. J. p. 1219.
Headnote 2.  34 Cyc. p. 18 (Anno.).
Headnote 3.  34 Cyc. pp. 343, 344, 380.
Headnote 4.  34 Cyc. p. 344.
Headnote 5.  4 C. J. p. 572 (Anno.).
Headnote 6.  4 C. J. p. 883.
Headnote 7.  4 C. J. p. 845.
Headnote 8.  14a C. J. p. 469.

Appeal from Third District

be served on receiver only, and failure to serve notice on any other party does not require dismissal of appeal.

2. RECEIVERS—"RECEIVER" DEFINED. Purpose of appointing receiver is to obtain suitable and proper person or corporation to collect and preserve assets of insolvent, or ascertain who are creditors, and to administer assets for use and benefit of creditors, and all interested parties, including stockholders, if insolvent is corporation, and such person is called a "receiver."

3. RECEIVERS—RECEIVER ALONE, UNDER DIRECTION OF COURT, CAN CONTROL AND DIRECT PROCEEDINGS EITHER IN TRIAL COURT OR ON APPEAL. Under Comp. Laws 1917, § 6768, relating to powers of receiver, receiver alone, under direction of court, can control and direct proceedings either in trial court or on appeal.

4. RECEIVERS—RECEIVER ORDINARILY IS NOT CONCERNED WITH WHO IS ENTITLED TO PREFERENCE AMONG CLAIMANTS. Where question of preference arises between claimants, controversy is merely between them, and receiver ordinarily is not concerned therein.

5. APPEAL AND ERROR—EVEN IF APPEAL BOND IS INSUFFICIENT, DISMISSAL OF APPEAL IS NOT AUTHORIZED. Even if appeal bond is insufficient, such fact does not authorize dismissal of appeal.

6. APPEAL AND ERROR—ON APPEAL FROM DISALLOWANCE OF CLAIM AGAINST INSOLVENT CORPORATION, APPELLATE COURT CAN EXAMINE EVIDENCE ONLY TO DETERMINE WHETHER SOME SUBSTANTIAL COMPETENT EVIDENCE SUPPORTS EVERY MATERIAL AND CONTROLLING FINDING. Appeal from disallowance of claim against insolvent corporation for which receiver has been appointed is appeal in proceeding at law, and appellate court can examine evidence only to determine whether some substantial evidence supports every material and controlling finding.

7. APPEAL AND ERROR—RECONCILIATION OF CONFLICTING EVIDENCE AND DEDUCING INFERENCE THEREFROM HELD PROVINCE OF DISTRICT COURT. In receivership proceedings, reconciliattion of conflicting evidence as to claim against receiver, as well as deducing inference therefrom, is province of district court.

8. CORPORATIONS—ADJUSTMENT OF DISPUTED CLAIM BY GENERAL MANAGER OF CORPORATION, NOT ACCEPTED BY CORPORATION, HELD NOT BINDING ON IT. Where claim against corporation was not just or legal, adjustment of such disputed claim by its general

manager, not accepted by corporation or by any one in authority, did not bind corporation, and receiver of corporation properly disallowed it.

Appeal from District Court, Third District, Salt Lake County; *G. A. Iverson*, Judge.

Action by Walker Bros., Bankers, against the Intermountain Milling Company, in which the Bankers' Trust Company was appointed receiver, and the National Copper Bank intervened. From judgment disallowing claim of the Pacific Grain Company, it appeals, and the receiver moves to dismiss the appeal.

Motion to dismiss DENIED, and judgment AFFIRMED.

*Cheney, Jensen, Martineau & Stephens*, of Salt Lake City, for appellant.

*Dickson, Ellis, Parsons & Adamson*, of Salt Lake City, for respondent.

FRICK, J.

A motion to dismiss this appeal has been interposed by the Bankers' Trust Company upon the grounds: (1) That the notice of appeal was not served upon either the plaintiff in the action, Walker Bros., Bankers, hereinafter called Walker Bros., or the Intermountain Milling Company, defendant in the action, hereinafter designated company, or upon the National Copper Bank, hereinafter called intervener; and (2) that "no undertaking on appeal running in favor of either the plaintiff, the said intervener, the respondent (company), or either or any of said creditors of said defendant Intermountain Milling Company, has been given by claimant and appellant in said cause."

The facts relevant to the motion to dismiss, briefly stated, are these: On September 15, 1921, Walker Bros. filed a complaint in the district court of Salt Lake county against

the company, in which it was in substance alleged that the company was indebted to them on a promissory note in the sum of $30,000, which, for reasons stated, it was unable to pay; that the company either was insolvent or in imminent danger of insolvency; that its assets, stating them in general terms, were in danger of being dissipated and wasted unless a receiver were appointed to collect and preserve them and to administer the property of the insolvent company for the benefit of all creditors of the company; that the Bankers' Trust Company was authorized by law to act as receiver, and Walker Bros., prayed that it be appointed as such. On the same date on which Walker Bros.' complaint was filed, the intervener tendered a complaint in intervention and asked to be permitted to intervene in the action. It alleged in its complaint that the company was indebted to it in the sum of $25,000 on a promissory note which it was unable to pay. The intervener was permitted to intervene, but for what purpose is not very clear nor of great importance. The company forthwith entered its voluntary appearance in the action and consented to the appointment of the trust company as receiver. On the same date the court aforesaid entered an order appointing the Bankers' Trust Company, hereinafter called respondent, as receiver, of the company. The necessary notice to creditors was duly given and a time fixed within which claimants were required to present their claims to the receiver. In due time the respondent, as receiver, filed its report in which its acts respecting the filing and allowance of claims are set forth in detail. In the same report, it, however, also listed a number of claims which it recommended should be disallowed, among which is the claim of the Pacific Grain Company, hereinafter called appellant, amounting to $47,051.10. Pursuant to that report, the court made an order and issued a citation to the appellant to appear on a certain date and show cause ''why your claim in the sum of $47,051.10 * * * should not be disapproved by this court as prayed for by said receiver.'' On the 15th day of December, 1922, the time finally agreed upon to take the testimony on the order to show cause, the appellant, by

its counsel, and the respondent, as receiver, by its attorneys, appeared before the court and the hearing proceeded. No creditor or any one except those just mentioned appeared or took any part in the proceedings which were entitled thus: *"In the Matter of the Receivership of the Intermountain Milling Company Re Claim of Pacific Grain Company."* In connection with the foregoing special title, the original title of the action commenced by Walker Bros., as aforesaid was also retained. In all of the subsequent proceedings, including the findings of fact and the judgment, the foregoing special and general titles were used. After a full hearing at which much evidence, both oral and documentary, was produced by the appellant in support of its claim and by respondent as receiver in opposition, the court made its findings of fact and conclusions of law disallowing appellant's claim as recommended by the receiver and entered judgment accordingly.

This appeal is from the judgment. The notice of appeal was served only upon the respondent as receiver, and hence this motion to dismiss.

It is vigorously contended by counsel for respondent that Walker Bros., as plaintiff in the original action, and the intervener, as well as other creditors, are adverse parties, and hence are necessary parties to this appeal. They cite a number of decisions from this court as well as from other courts in support of their contention.

While it is true that this court has frequently held that all adverse parties to an action or proceeding whose interests might be affected in case the judgment appealed from were modified or reversed are necessary parties to an appeal and must be served with notice of appeal, yet this court has never been called upon to pass upon the question now presented. The question here is: Who are the adverse parties in a receivership proceeding, where all that is involved in the proceeding is the allowance or disallowance of the claim of a single claimant, and where none of the parties to the original action, or any creditor of the insolvent corporation, or any other claimant, appeared or took part in

the hearing upon the claim, and when the receiver alone appears and contests the claim, and when the claim is disallowed the claimant appeals?

If in such a proceeding notice of appeal is required to be served upon others than the receiver, then notice must necessarily be served upon all the creditors and other claimants of the insolvent corporation, since all of those may and perhaps will be affected if the claim is allowed and ordered paid out of the assets, which, confessedly, are insufficient to pay all the claims in full. It would seem that the mere statement of the proposition also answers it. The very purpose of appointing a receiver is to obtain some suitable and proper person or corporation to collect and preserve the assets of the insolvent, to ascertain who are the creditors, and to administer the assets for the use and benefit of the creditors of the insolvent and all interested, including the stockholders if the insolvent be a corporation. Such a  1, 2 person is called a receiver, and in law necessarily becomes the representative of all concerned for the purposes of the receivership. Is it not pertinent to ask if in this case appellant had sought and obtained permission from the court to sue the receiver for the purpose of determining the validity of its claim, that if in such an action no one save the receiver had entered an appearance and contested the claim, that upon a trial of the case the claim had been disallowed and judgment to that effect entered from which the claimant appealed, whether any one would seriously contend that any other claimant or creditor would be a necessary party to the appeal? Is it not apparent that if other creditors are necessary parties to this proceeding, they would be, in the proceeding just described? True, it is suggested that such a proceeding would be an independent action between the receiver and the claimant while this proceeding was conducted in the original action. While it is true that the title of the original action was carried along, yet that did not, and could not, make this proceeding other than an independent proceeding which was being conducted in the same way

and for the same purpose as an independent action would have been.

Comp. Laws Utah 1917, § 6768, provides:

"The receiver has, under the control of the court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, to collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize."

Under such a statute, although the receiver permitted other claimants or creditors to appear in the action against him to establish a claim or claims, he, nevertheless, alone would control the action, and he alone would be responsible to the court and the creditors. Alderson on Receivers, § 367; High on Receivers (4th Ed.) § 254b.

Again, if the receiver brought an action upon any chose in action or other claim owing to the insolvent corporation, the judgment on such an action, it is well settled, would be a complete bar to any other action upon such a claim. Nor is there any doubt that if in an independent action judgment were entered against the receiver he alone could appeal. High on Receivers (4th Ed.) § 264a; 24 Cyc. 343. Nor would he be required to serve notice of the appeal upon any one except the claimant. Is it not pertinent to ask, therefore, in case the judgment is the other way, why the claimants may not also appeal without serving notice of the appeal upon others?

As pointed out by Mr. High, in his excellent work on receivers (4th Ed. § 254b), the prevailing practice in the courts now is not to try out each contested claim in an independent action, but to do that in the principal action, as was done in this case. The mere fact, however, that it is preferably done in that way in no way affects the independency of the proceding nor the right of the receiver or the claimant to appeal from the judgment. The judgment under the latter method has precisely the same effect as it would have if it were given in an independent action, and a proceeding to test its correctness on appeal must be the same. True, it might be that in case a creditor or other

claimant joined the receiver in defending against a particular claim and had made himself a party to the proceeding or action, if the action were an independent one, such a creditor or claimant would also have the right to be joined as a party on the appeal. As to that, however, we express no opinion.

That, however, is not this case. Here the receiver of necessity represented all the other claimants in the court below, and he likewise does so in this court. He, and he alone, under the direction of the court, can control and direct the proceeding, either in the court below or on appeal in this court. Alderson on Receivers, § 367.

Counsel for respondent have, however, cited a number of cases which they contend are decisive of this motion. We have carefully examined and considered all of the cases cited by counsel. Of the cases cited, there are only two which in part support counsel's contention, namely, *Cole* v. *Trimble,* 112 Wash. 548, 102 P. 972, and *Crawford* v. *Seattle, R. & S. Ry. Co.,* 92 Wash. 670, 159 P. 782. Those decisions are, however, largely, if not entirely, based upon the statute of Washington and the construction that had been given it in former decisions of the Supreme Court of that state. In *Cole* v. *Trimble,* the latest Washington case, the court declines to pass upon the question of whether all creditors who are interested in the insolvent estate are necessary parties to an appeal. It is also pointed out in that case that the omitted parties were parties to the original action, and hence, it is asserted, they were necessary parties on appeal. It still further appears from that case that the question of preferences was involved. It is well settled that where a question of preference arises between claimants the controversy is merely between them. The receiver, ordinarily, is not concerned with who is entitled to a preference, but that is a matter which is determined as between the claimants claiming preferences. Nothing of that kind is involved in this proceeding.

It is true that in the case cited from the Supreme Court of Washington great stress is laid on the fact that where

the assets are insufficient to satisfy all the claims in full, all the creditors are interested in the allowance or disallowance of additional claims. While the writer has the highest regard and respect for the writer of the opinion in the Washington case, and likewise entertains that high regard and respect for the opinions of the Supreme Court of Washington, yet it seems that the Washington court lays too much stress upon the mere fact that the creditors are interested in the allowance or disallowance of claims. The controlling question is not whether they are interested in the allowance or disallowance of a particular claim, but the controlling question is whether they are represented in the proceeding so as to be bound by any judgment rendered therein either for or against the receiver.

The case of *Bosworth* v. *Terminal R. Ass'n,* 174 U. S. 182, 19 S. Ct. 265, 43 L. Ed. 941, is a leading, a most interesting, and illuminating case upon the duties, rights, and powers of receivers and to what extent they act in a representative capacity. The discussion of this motion, however, has already extended beyond reasonable limits, and hence we cannot devote space to a review of that case. It must suffice to say that the opinion in that case is clearly to the effect that in matters such as are involved in this proceeding, the receiver is the representative of all creditors and all are bound by any judgment rendered therein either in the court below or on appeal.

In *Thom* v. *Pittard,* 62 F. 232, 10 C. C. A. 352, in speaking of the relationship of the receiver to the parties interested in the receivership, the court said:

"But we must remember that the receiver represents all the parties in interest. He stands for the railroad company as well as for all persons having claims against it, and he speaks for the bondholders as well as for the stockholders."

To the same effect is *Painter* v. *Painter,* 138 Cal. 231, 71 P. 90, 94 Am. St. Rep. 47.

The receiver, in legal effect, is just as much a representative of the creditors and claimants of an insolvent corporation as is the administrator or executor of the heirs, legatees,

creditors, and claimants of the decedent's estate in which he is appointed. If the doctrine that a receiver represents all creditors and claimants in allowing or disallowing claims and in bringing and defending actions in the course of his receivership is once departed from, then there is no point at which courts can stop in bringing in parties to a particular action or proceeding. If some particular creditor or claimant is entitled to be heard, all are. Moreover, if such be the law, then no bill of exceptions can legally be settled and allowed in any case without serving the same upon all the interested parties.

What has been said also disposes of the contention that the appeal bond is insufficient. Even if that were so, however, that would not authorize a dismissal of the appeal.

The motion to dismiss the appeal, therefore, should be, and it accordingly is, denied.

In proceeding to the merits of this appeal, in view of the questions presented it becomes important to keep in mind the relationship of the appellant (claimant) and the company against whom the claim is made, which is the cause of this controversy. The claim arises out of transactions between appellant and the company which occurred during the months of September, October, and November, 1920. During the period just stated, appellant was a corporation of the state of Oregon with its principal place of business at Portland. It was engaged in buying, selling, and exporting wheat, and perhaps other grains. The capital stock of appellant was all owned by one M. H. Houser, who assigned a small number of shares to some of his employees who were chosen and acted as the officers and directors of the appellant corporation. In July, 1920, the company was a corporation of Utah with its principal place of business at Salt Lake City, and was engaged in the business of buying and selling wheat. Only part of the authorized capital stock of the company had been issued on the date aforesaid, and about all that was issued was owned by one R. E. Miller. The company likewise issued some of the stock to others to qualify

them to act as directors of the company. In July, 1920, Houser purchased 18/25 of the authorized capital stock of the company and from that time controlled the company. The remaining 7/25 of the capital stock of the company was owned by Miller, but the same was conditionally pledged to Houser as the owner of the stock of the appellant corporation. The stock of the two corporations was thus substantially all owned by Mr. Houser. When Houser purchased the stock of the company, a new board of directors and a new set of officers were elected for the company. The board of directors of both appellant and the company consisted of five members. Three directors of appellant were chosen as directors of the company, so that a majority of the board of directors of the company were also directors of appellant. One S. C. Draper, who acted as the president of appellant, was chosen as the president of the company, so that the same person was president of both companies. Miller was chosen general manager of the company, subject, however, to the direction and control of the board of directors, a majority of whom, as we have seen, were directors of appellant.

Appellant contends that 89 cars of wheat, amounting to about 120,000 bushels, were by Miller consigned to appellant at different points during the months of September, October, and November in 1920. The appellant insists that it held the wheat, or other wheat of the same quality, on consignment for the company, and that when it was finally sold the price of wheat had fallen so that a loss in a sum in excess of $100,000 was sustained, of which loss the company should pay 40 per cent., which constitutes the claim here in question amounting to $47,051.10. Upon the other hand, Miller and the receiver in effect contend that although the wheat was consigned as contended by appellant, it nevertheless was consigned upon the express order and direction of appellant, and that the loss by reason of the fall in price of wheat should all be charged to appellant.

Much evidence, oral and documentary, was produced both on behalf of appellant and on behalf of the receiver in sup-

port of their respective contentions. The court, after hearing the evidence, made its findings of fact and conclusions of law disallowing the claim and entered judgment accordingly. The findings of fact are very voluminous consisting of 40 independent paragraphs, in some of which many facts are found, while the findings as a whole cover 29 pages of the printed abstract. In view of the great length of the findings of fact, it is impractical to set them forth even in condensed form in this opinion unless it be extended beyond reasonable limits. The findings of fact cover every phase of the transactions out of which this controversy arose, and they necessarily go into great detail. Twenty-two out of the 40 paragraphs of the findings are assailed by appellant as not being supported by the evidence or as being contrary thereto.

We have carefully read and considered all of the evidence, both oral and documentary, and the inferences that may be legitimately deduced therefrom and we have become thoroughly convinced that the evidence sustains all of the essential and material facts found by the court.

This is a proceeding at law, and therefore we can examine into the evidence only for the purpose of determining whether there is some substantial competent evidence in support of every material and controlling finding.     6 In view of the great length of the findings and the great amount of evidence, we could subserve no good purpose in attempting an analysis of either the evidence or the findings. Nor would it be of any use to state them even in substance. As conclusive evidence of the fact that such an attempt would be a vain effort, we need only mention the other fact that counsel for appellant devote 157 pages of their printed brief to a discussion of the evidence, while counsel for the receiver devote 81 pages of their brief to the same purpose. From the statements contained in their respective briefs, we are well satisfied that counsel for both sides are thoroughly convinced that their construction of the evidence should prevail. Under such circumstances, it would be a needless effort on our part to try within the lim-

its of an opinion to convince counsel that their respective views of the evidence should not prevail.

In addition to the foregoing, it should also be kept in mind that in view of the peculiar relationship existing between appellant and the company, and appellant and Miller, the general manager of the company, and the circumstances surrounding the transactions which gave rise to appellant's claim, this case forms a class of its own which is to be determined in accordance with the facts and circumstances developed at the trial.

In view, therefore, that the case is practically sui generis, a discussion of the facts could be of no practical benefit to any one and could satisfy no one except perhaps the party in whose favor they were finally resolved.

In view of all the foregoing circumstances, we have refrained from a discussion of the findings as well as of the evidence, and shall content ourselves with merely stating that after a full and careful scrutiny of the evidence, we are convinced that the court was fully justified in finding that the 89 cars of wheat were consigned upon the order and request of appellant, and that the loss, if any was sustained by reason of the decline in the price of the consigned wheat, should fall upon appellant and not upon the company and its creditors. In making the foregoing statement, we have not overlooked the fact that appellant contends that the documentary evidence produced by it tended to prove the wheat was consigned at the request of Mr. Miller and that it was by reason of his request that the wheat was held on consignment and not promptly sold. While it is true that there is evidence in the record which is subject to the construction placed upon it by appellant, yet there is also evidence in direct conflict thereto, while there is much of appellant's own evidence from which different inferences may be deduced. The reconciliation of the conflicting evidence as well as the deducing of inferences therefrom was the province of the district court, and after carefully going into the evidence we are again satisfied that the court was justified in its deductions and findings.

We desire to add, in passing, that we agree with the district court that what, by Mr. Draper, the president of both appellant and the company, was said to have been merely friendly advice on his part and on the part of appellant to Mr. Miller were, nevertheless, both in fact and in law, orders and directions which came to him from a superior officer and from one having superior knowledge of the true condition of the wheat market, which Mr. Miller was not only justified in following, but which it was his duty to obey. In this connection it should also be remembered that the money represented by the promissory notes upon which the original action for the receivership was based was loaned at the instance and upon the credit of the appellant, although the notes were executed only by and in the name of the company. Moreover, while it is true that the company exercised the powers of a corporate entity, it nevertheless was only an arm of the appellant which it used as a means of carrying on its very extensive business of buying, selling, and exporting wheat.

It is, however, further insisted that Mr. Miller and a representative of appellant had met, and had discussed and adjusted the differences existing between appellant and the company, and that by virtue of that adjustment it was agreed that appellant should bear 60 per cent. of the loss on the 89 cars of wheat, while the company should bear 40 per cent. thereof, which latter amounted to $47,051.10. While it is true that such an adjustment was made between Mr. Miller on the one hand, and a representative and employee of the appellant on the other, it is also true that the adjustment was never ratified or approved by the board of directors of the company or by any one in authority. Neither is there anything in the record showing authority on the part of Mr. Miller to bind the company by such an adjustment. If the claim, as we have attempted to show, was not a just or legal claim as against the company, Mr. Miller could not make it such by any adjustment he might have made. True, as between the company and appellant, if no objections were interposed by any one,        8

and the creditors were not here objecting, the adjustment might prevail. The record, however, shows that at least one director of the company did object to the adjustment. Be that as it may, however, if the claim was not a just and proper claim as against the company, then it was the duty of the receiver who represented the company, the banks who loaned the money, and the other creditors, to disallow the claim. That is all that has been done, and the court gave appellant every reasonable opportunity to establish its claim. The court found and entered judgment to the effect that the claim was not a just or proper one as against the company or its creditors, and after a full consideration of all the evidence and the facts and circumstances before the court, we are of the opinion that the court was fully justified in making its findings, conclusions of law, and in entering the judgment disallowing the claim.

The judgment is therefore affirmed, with costs.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ., concur.