## NIELSON'S ESTATE v. NIELSON et al.

No. 6733.  Decided February 21, 1945.  (155 P. 2d 968.)

566

See 34 C. J. S. Executors and Administrators, Sec. 612. 14 Am. Jur., 347.

*Grover A. Giles* and *Irvin, Skeen & Thurman*, all of Salt Lake City, for appellants.

*Delbert M. Draper*, of Salt Lake City, for respondent.

McDONOUGH, Justice.

This is an appeal by certain heirs of decedent from an order confirming sale of securities. Respondent administratrix moved to dismiss the appeal on the ground that notice of appeal was not served upon the successful bidder who became the purchaser to whom the sale was confirmed.

We denied the motion to dismiss the appeal, and we deem it advisable to indicate the reasons therefor. The respondent has relied upon the decision of this court in the case of *In re Auerbach's Estate* (*Wilson* v. *Meyer*) 23 Utah 529, 65 P. 488. In that case the highest bidder, to whom the court refused to confirm sale, was the appellant. He not only submitted his bid, but he filed a separate petition for confirmation of sale to himself, and by such petition made himself a party. That case is therefore distinguishable from the case at bar. Here, the highest bidder did not join in the petition for confirmation nor file any petition to secure relief. In fact no bidder was a party to the proceeding within the

meaning of Section 104-41-6, U. C. A. 1943, which requires notice of appeal to be served on the "adverse party or his attorney." Bonneville-on-the-Hill Company, the bidder, did not file any pleading nor enter any appearance in the proceeding so as to become a party thereto, within the meaning of Sec. 104-43-6, U. C. A. 1943. The company was not at any stage of the proceeding a party to the proceeding, so that it was not necessary for it to be served with notice of the appeal.

The only parties to the proceedings below were the administratrix and the heirs who field objections to confirmation of the sale. *Cf. Walker Bros., Bankers* v. *Inter-Mountain Milling Co.*, 65 Utah 340, 237 P. 228.

Before discussing the assignments of error which the appellants argue in support of their contention that the order confirming the sale of personal property should be vacated, it is necessary to review the facts.

Heber Nielson died intestate on September 6, 1942, leaving his widow (who became the administratrix), and 36 collateral heirs consisting of brothers, sisters, nephews and nieces of decedent. The estate was appraised at $264,000 although the inheritance tax appraisal was somewhat higher. The widow has the greatest interest in the estate. She is entitled to $25,000 plus one-half of the net estate in excess of $25,000. Sec. 101-4-5, U. C. A. 1943.

The administratrix lacked sufficient funds to pay inheritance taxes, federal estate taxes, and the balance of the indebtedness to a stock broker on stocks purchased by decedent on the exchange. These outstanding obligations aggregate about $125,000. On December 10, 1943, she advised counsel for the collateral heirs that she considered it advisable to sell securities to meet the above-mentioned debts. She proposed sale of the stocks of three corporations, Utah-Idaho School Supply Company, Nielson Investment Company, and Peoples' Finance and Thrift Company. A unit bid of $110,000 was made by Bonneville-on-the-Hill Company for all of said stocks. The managements of these companies were said to be interconnected. On December

23, 1943, the administratrix made a return of sale and petitioned for confirmation thereof, alleging the existence of the tax obligations and debts, insufficient funds to meet the obligations, and averring that such sale was necessary to discharge them. She further alleged that such sale would be for the best interests of the estate, for the reason that the named stocks had no known market value, and that it was difficult to interest people in their purchase.

Four collateral heirs, subsequently joined by 23 others, on the day before the date set for hearing of the petition for confirmation of sale, filed objections, none of which objections denied the alleged indebtedness nor urged that the sale of the named stocks as one unit would be detrimental to the best interests of the heirs or of any creditor. The objections may be summarized as follows: (a) That the stocks named could likely be sold at a better price at some later date, and that it would be for the best interests of the estate to defer sale. (b) That there was contemplated some plan by which the stocks could be "held intact and distributed in kind to the heirs, and that such distribution would be in their best interest." (c) That there were other assets in the estate, which, by careful handling, could be used to raise funds to meet existing emergencies without the sale of these particular stocks. (d) That the confirmation of sale as proposed would not be for the best interests of "all persons interested in said estate."

When it became apparent that delay would be encountered in confirmation by reason of said opposition, to avoid assessment of penalties for delinquency in payment of federal estate tax, the administratrix who is the surviving widow, obtained a court order authorizing her to personally advance as a loan, sufficient funds to pay the federal estate tax. While the penalty was thus averted before hearing on petition for confirmation of sale, the amount of the tax merely became payable to the widow.

On January 19, 1944, at the time set for hearing on the regular probate calendar, counsel for some objectors requested ten days to prepare for trial, and requested that the

case be placed "on the trial calendar as in civil cases." Objection was then made at the time to which the case was continued for hearing, that some of the heirs "have not been served with process" of any kind. Counsel stated that the case was still "on probate calendar" and asked that it be "transferred to the trial calendar" in the "civil division." The trial judge informed counsel that the presiding judge had arranged for this particular division to conduct the hearing, and that the case was then proceeding to trial without further delay, and that if other heirs had joined with objectors of record and were represented by counsel they were in court and no further process was necessary.

After overruling motion for further continuance, the court allowed evidence to be given in support of the petition for confirmation of sale. Counsel for the objectors freely cross-examined witnesses and offered evidence, ostensibly to support their objections to confirmation of sale. However, when the court announced that in the court's judgment the sale of the particular stocks was necessary to pay taxes and debts, and that it would be for the best interests of the estate to sell all of the stocks in question, counsel was asked if the objectors had anything further to offer. Counsel stated they had nothing further to submit. No plan of any kind had been presented either for avoidance of the sale of the particular stocks, nor as to how any other assets could be used more profitably to meet the obligations of the estate. When the court announced that it would entertain bids, counsel for the objectors asked that findings of fact and conclusions of law and an order be entered on "that phase of the case" before proceeding further. The court denied the request, stating that no cause had been shown for jeopardizing the bid already submitted by any delay which would attend such piecemeal procedure.

A prospective competitor of the original bidder then requested opportunity to examine witnesses as to the affairs of the three corporations to see if the assets justified any higher bid, which resulted in some further delay. As the

bidding proceded, each bid was submited for a unit price on the combination of the stocks, or "en bloc," until one bidder offered $112,000 for all stocks with the exception of the common stock of Nielson Investment Company, which he stated he desired to omit from the bid. The court refused to entertain such bid, ruling that the question of separate bids on each kind of stock of each company had already been resolved in favor of the sale of all of the stocks as one unit. The person who made such qualified bid, subsequently raised his bid for the entire block of stocks of the three companies to $128,500. When the original bidder offered $129,000 the competitor stated he had made his last bid. No other bids being submitted on the call for further and better bids, the sale of all of the stocks to Bonneville-on-the-Hill Company for $129,000, was ordered confirmed.

At the conclusion of the entire proceedings, the court entered findings of fact, conclusions of law and an order whereby it was adjudged that the sale of said stocks was necessary to pay the debts and taxes; that it was for the best interests of the estate that such stocks be sold; and that a sale of the other assets would not yield a sufficient amount to discharge the obligations and expenses. It found that said bid of $129,000 was the highest and best bid. The findings also recited that the objectors represented distributive interests in the estate aggregating approximately one-third of the estate, while the non-protesting heirs would receive distribution of about two-thirds of the estate. The objectors appeal from the aforesaid order of the court.

Appellants assign the following as alleged prejudicial errors on the port of the trial court: (1) Refusal to transfer the case to the trial calendar for special setting after objections were filed, and treating the case as a probate matter instead of a contested civil case. (2) Proceeding with the sale and bidding in court without first making findings of fact, conclusions of law and an order as to necessity or propriety of sale of the particular stocks in

controversy. (3) Proceeding with confirmation of sale without sufficient evidence to warrant such sale. (4) Confirming sale in a manner unauthorized by law, by ordering sale of stocks in one block instead of requiring separate bids on each class of stock. (5) Refusal to entertain a bid of $112,000 for all of the stocks *except* the block of common stock of Nielson Investment Company.

As to the first alleged error, appellants argue that the filing of objections operated to give the case the same status as "any other civil action between two opposing parties" under the Code of Civil Procedure, and that the case therefore should have been "transferred" ■ from the probate division to the civil division for trial to be governed by statutes and procedure applicable to plenary actions. Appellants claim that the case could not properly proceed any further as a "probate matter" because it was then a contested case. They rely on Sections 102-14-17 and 18, U. C. A. 1943 (Probate Code).

102-14-17.

"All issues of fact joined in probate and guardianship proceedings must be tried in conformity with the requirements of the code of civil procedure, and in all such proceedings the party affirming is the plaintiff, and the one denying or avoiding is the defendant.  *  *  *"

102-14-18.

"If no jury is demanded, the court must try the issues joined.  *  *  *  If the trial of the issues joined requires the examination of an account, the court must try the matter or refer it, and no jury can be called."

An "issue of fact" triable by jury should not be confused with a matter of *judicial discretion,* in determination of questions as to the necessity for sale of property or that a particular sale is for the best interests of the estate under the provisions of Sections 102-10-1 and 10, U. C. A. 1943. Apparently, appellants overlook Sec. 102-1-6 of the Probate Code: 102-1-6.

"The district * * * courts and the judges thereof sitting in probate and guardianship matters shall exercise all such powers, consistent with the provisions of this title, as are or may be conferred upon those courts or judges, respectively, in other proceedings; and, except as otherwise provided in this title, the provisions of the code of civil procedure shall be applicable to and constitute the rules of practice in probate and guardianship proceedings."

The statutes cited by appellants do not contemplate that the filing of objections to a petition in probate, alters the nature of a case as a probate matter. Such statutes do not require that some judge other than the one hearing probate causes try issues of fact. As pointed out in *Re Thompson's Estate,* 72 Utah 17, 33 269 P. 103, 108:

"We in this state have no independent probate or surrogate court. Our district courts, courts of general jurisidiction, are clothed with power to exercise, and exercise under our probate code, all probate powers and judicial functions. * * *"

The statutes in question contemplate that when an issue of fact arises, as distinguished from a matter of judicial discretion, such issue of fact shall be tried in conformity with the requirements of the Code of Civil Procedure, to allow the adverse party to challenge the sufficiency of pleadings by motion or demurrer, to grant parties a hearing on the issues, including the right to present evidence, and to cross-examine witnesses produced by the other side. In *McLaren v. McLaren,* 99 Utah 340, 106 P. 2d 766, relied upon by appellant, we held that when issues of fact arise in a probate cause, the court should determine such issues according to the Code of Civil Procedure, but that it is not necessary to commence a new or independent action between the contesting parties. Language used in the McLaren case which might be considered as supporting appellants' contention must be read in the light of the problem there involved. There, the proceeds of an insurance policy were paid to the administrator of the estate. An heir claimed to be the owner of such

proceeds as assignee of decedent. He could have sued the administrator therefor in a plenary action. Instead, the administrator petitioned this court for authority to turn such proceeds over to the assignee. Upon objections filed by another heir, the court heard evidence and entered judgment which we affirmed.

But here the probate court was dealing with a matter perculiarly cognizable by a probate court; a matter addressed to the judgment of such court. We surmise that were there separate probate courts in this state—courts not clothed with general jurisdiction—it would not be contended that upon a petition for confirmation of sale of assets of an estate, the filing of objections thereto would require transfer of the cause to another court for determination of the matter.

Not all of the allegations of the petition of the administratrix were controverted. For instance, there never was any issues as to whether the aggregate debts and charges to be paid out of estate funds amount to $125,000, nor as to whether *some* stocks would have to be sold ■ eventually to liquidate the obligations of the estate. Nevertheless the court had a duty to inquire into the obligations and the allegations pertaining thereto in order to judicially determine the amount of the debts as one of the premises for the claim of necessity for the sale of property. It certainly would not tend to expedite judicial proceedings to have a special hearing before the district judge sitting in probate as to uncontroverted matters, and then have to transfer the case to some other judge to hear the contested items. As indicated in *Re Clift's Estate,* 101 Utah 343, 350, 122 P. 2d 196, 199:

"We do not wish to imply that by separate hearings we mean that of necessity the hearings must be on separate days or hours. It is sufficient if the hearings are so conducted that the contestants and the courts will understand whether or not the testimony being submitted is upon the contested probate matter or upon the uncontested probate matter."

The case thus continues to be a probate matter subject to trial in the probate division, even if it contested. We must therefore reject the argument that some new process had to be served upon the noncontesting heirs before the case could be heard. When the petition for confirmation was filed, notice was given to all of the heirs. If they failed to appear by objections or otherwise, they impliedly gave consent to have the matter heard in their absence. Those who filed objections or joined in objections made a general appearance, and they were in court for all purposes, since, there was no special appearance entered to question the authority of the court to proceed.

There is no substance to the contention that findings of fact, conclusions of law and an order should have been entered before proceeding to call for further bids in court. Such requested procedure is not only unauthorized, but if permitted, would piece-meal hearings, cause confusion, promote vexatious delays and in many cases obstruct justice. No provision is found in either the .Probate or the Civil Code to warrant such a demand for findings, conclusions and order at some stage of the hearing before opportunity for hearing on the entire petition.

The third point raised by appellants is that the court proceeded with confirmation of sale without sufficient evidence to warrant such sale; and that the administratrix failed to prove either necessity for the sale or that such sale in question is for the best interests of the estate. The aggregate amount of indebtedness and charges was never put in issue. The fact that the widow personally made a loan to avoid a penalty merely took the claim out of the status of an emergency demand, but the obligation continued as far as amount was concerned. The argument of objectors that "no emergency" existed, constitutes no valid ground of objection to the sale. The statute does not require that the estate be in peril as a

condition to confirmation of sale. It is neither essential to allege nor to prove an "emergency."

Sections 102-10-1 and 10 in substance authorize the executor or administrator to sell real or personal property whenever

"a sale of property of the estate is necessary to pay  *  *  *  the debts outstanding against the estate, or debts or expenses or charges of administration  *  *  *  or when it appears that it is for the advantage, benefit and best interests of the estate and those interested therein."

The administratrix requested confirmation of sale not only on the ground of necessity, but also because it was "for the best interests of the estate."

Under the above-cited statutes, it is the administrator or executor who has the right to take the initiative as custodian of estate property, to sell part or all of it when it appears to him to be necessary to pay the debts or it is for the best interests of the estate. As a check on the soundness of his judgment, the statutes provide for confirmation of sale by the court in certain cases in order to vest title in the purchaser. The heirs may not substitute their own judgment for that of the personal representative; but by proper objections to a petition for confirmation of sale, beneficiaries of the estate may show facts and circumstances from which the court might find either that the sale is not necessary to pay debts or other obligations, or that a particular sale is not for the best interests of the estate. Objections to a petition for confirmation constitute an appeal to the sound judgment of the court. The court must hear evidence in order to ascertain facts and circumstances, to properly exercise such judgment.

In reviewing an order confirming a sale or denying application for confirmation of sale, such order will not be set aside except upon a showing of abuse of discretion.

There must be a showing of misapprehension of the facts by the court or capricious or arbitrary action without due regard to facts and circumstances. While appellants allege that the court acted arbitrarily, a review of the entire record shows that the lower court was most indulgent to give objectors ample opportunity to establish some premise which would warrant the court in denying confirmation of sale. While appellants denied that the sale of the particular stocks would be for the best interests of the estate and promised to present some plan to obviate the sale, no facts were presented which would justify any finding that the proposed sale is not for the best interests of the estate. No plan was ever presented by objectors, nor any showing made that the proposed sale is detrimental to the interests of the beneficiaries nor economically wasteful.

The term "for the best interests of the estate" does not mean that all heirs shall approve the sale. The "best interests of the estate" and "those interested therein" can be ascertained only by judicial inquiry which takes into consideration how the ultimate distributees as a whole as well as creditors are going to be affected by such sale. It is not a matter of numerical majority, for a majority of heirs as in this case, might have a relatively minor financial interest in the estate. In this case there was ample evidence to show that the stocks in question could be sold most advantageously as a unit by reason of the fact that the interconnection in their management offered some measure of control over the companies which would enable the administratrix to obtain a better price than would separate sales of the several stocks.

The record reveals no offer of proof of the existence of bidders for the separate parcels whose bids would aggregate a total in excess of the amount of the successful bid for the whole.

The final argument of appellants is that the court should have accepted the bid of $112,000 for all stocks *except* the

block of common stock of Nielson Investment Company. It is pointed out that the excluded stock was appraised at about $19,000 and that this sum plus the ■ bid for the rest of the stocks in the sum of $112,000 exceeds by $3,000 the bid accepted. But the record fails to reveal that the excluded stock would bring its appraised value or any substantial part thereof at the time of the hearing, if sold separately. It likely appeared to the court that since control of the corporations was the motivating cause for purchasing the stocks, if the one class of stock were omitted, such stock would be rendered worthless or at least greatly depreciated in value, so that no future sale would be likely. Furthermore, to split the block of stocks offered as one unit while bids were going higher would likely discourage competitive bids. When this qualified bid was rejected the person who made the bid raised his bid successively.

The appellants have failed to show that the bid for part of the offered stocks was a better bid than that accepted and for which the sale of the total was confirmed.

The order confirming sale is therefore affirmed. Costs to respondent.

LARSON, C. J., and TURNER, WADE, and WOLFE, JJ., concur.