IN THE MATTER OF THE ESTATE OF JACOB KATLEMAN, ALSO KNOWN AS JAKE KATLEMAN, DECEASED; LIBERTY KATLEMAN, ONE OF THE HEIRS OF THE ESTATE, AND JENNIFER LYNN KATLEMAN, MINOR HEIR OF THE ABOVE-ENTITLED ESTATE, BY AND THROUGH WILLIAM G. RUYMANN, HER ATTORNEY APPOINTED BY THE ABOVE-ENTITLED COURT, APPELLANTS, *v.* BELDON R. KATLEMAN, PURPORTED PURCHASER OF PERSONAL PROPERTY, AND FIRST NATIONAL BANK OF NEVADA, COADMINISTRATOR, RESPONDENTS.

Nos. 3731 and 3732

April 15, 1954.                    269 P.2d 257.

See also 70 Nev. 184, 264 P.2d 843.

*Taylor & Gubler,* of Las Vegas, for Appellant, Liberty Katleman.

*William G. Ruymann,* of Las Vegas, for the Appellant, Jennifer Lynn Katleman.

*A. W. Ham & A. W. Ham, Jr.,* of Las Vegas; *Woodburn, Forman & Woodburn,* of Reno; and *Leo K. Gold,* of Beverly Hills, California, Attorneys for Respondent, Beldon R. Katleman.

*Jones, Wiener & Jones,* of Las Vegas, and *Abe Richman,* Esq., of Los Angeles, California, Attorneys for the Respondent, First National Bank of Nevada.

## OPINION

By the Court, EATHER, C. J.:

This is an appeal by Liberty Katleman, one of the heirs of the decedent, and by Jennifer Lynn Katleman, a minor heir, by and through William G. Ruymann, her attorney appointed by the court, from an order confirming sale of personal property made and entered July 22, 1952; from an amended order confirming sale of personal property made and entered September 10, 1952, and from the order of the court made and entered October 23, 1952, denying appellants' motion to vacate and set aside said amended order confirming sale, and from that certain order made and entered on the 23d day of October, 1952, denying appellants' motion for a new trial.

The facts necessary to an understanding of the points presented by the appeal are as follows:

The deceased, Jacob Katleman, also known as Jake Katleman, died intestate, on the 22d day of June, 1950, and at the time of his death was a resident of Las Vegas, County of Clark, State of Nevada.

Thereafter on the 6th day of July, 1950, the First National Bank of Nevada and Liberty Katleman, widow of the deceased, were appointed coadministrators of his estate, and on the 6th day of July, 1950, qualified as such, and are still acting as such coadministrators. On May 28, 1952, the First National Bank of Nevada, one of the coadministrators, filed a notice of intention to sell

personal property at public sale. The said personal property described in said notice consisted of 495 shares of stock in Elranco, Inc., a Nevada Corporation, and a promissory note in favor of the decedent against Elranco, Inc., in the amount of $81,631.12.

At the time the notice of intention to sell personal property at public sale was filed with the district court the same was signed by C. D. Brown, then assistant trust officer of the First National Bank of Nevada. The coadministrator, Liberty Katleman, was, at the time of filing said notice, absent from the State. The said notice was posted on the 28th day of May, 1952, in three public places, being as follows: One at the courthouse, one at the police station, and one at the city hall, all in the City of Las Vegas, County of Clark, State of Nevada. Said notice was also published in the Las Vegas Review-Journal, a daily newspaper of general circulation, printed and published in Las Vegas, Clark County, Nevada, three times, to wit: May 28, June 3, and June 8, 1952.

Pursuant to said notice of sale, a sale was held at the south fifth street branch of the First National Bank of Nevada, Las Vegas, Nevada, on the 9th day of June, 1952, at the hour of 11 o'clock a. m. of said day. There were present at the time of said sale, the following persons: Liberty Katleman, one of the coadministrators of the estate of Jacob Katleman, and one of the appellants here, Martin A. Clemens, M. L. Josephs, A. W. Ham, Jr., and Beldon R. Katleman.

A bid for said personal property was made by the said Beldon R. Katleman, being in the amount of $184,500. There being no further bids, the stock was sold to Beldon R. Katleman for the sum of $102,868.88, and the promissory note was also sold to Beldon R. Katleman for the sum of $81,631.12.

Thereafter, and on the 12th day of June, 1952, the First National Bank of Nevada, one of the coadministrators, filed a petition for confirmation of the sale. Said petition was executed by C. D. Brown, as assistant trust

officer of the First National Bank of Nevada, Las Vegas, Nevada. At the time said petition for confirmation was filed, the coadministrator Liberty Katleman, was absent from the State of Nevada. The said petition, at the time of filing the same with the clerk of the court, was noticed for hearing on the 24th day of June, 1952.

Thereafter, and on the 20th day of June, 1952, one of the appellants, Liberty Katleman, filed objections to the confirmation of said sale, being prior to the time set for the hearing of said petition. On June 21, 1952, William G. Ruymann, acting as attorney for Jennifer Lynn Katleman, a minor heir, also filed objections to the confirmation of said sale.

The objections of Liberty Katleman were based on the ground that the petition for confirmation of sale was not approved nor consented to by Liberty Katleman. The objections of the said William G. Ruymann, on behalf of Jennifer Lynn Katleman, were based on the ground that the stock was worth in excess of the amount bid on the same and the amount for which the same was sold, and that the security offered to secure the unpaid balance of the proposed purchase was inadequate, and on the further ground that there was no necessity for the estate to sell said personal property, including the stock and the note.

On June 24, 1952, a hearing was had on the petition for confirmation in department No. 2 of said district court. At that time the coadministrator, Liberty Katleman, appeared personally and requested that the hearing on the petition for confirmation be postponed. The court refused to postpone said hearing at that time, and took testimony of the witnesses present. At the conclusion of the taking of the testimony of the witnesses present, the court, however, consented to a continuance.

Before the commencement of the hearing on the petition for confirmation, at the request of counsel for the coadministrator First National Bank of Nevada, the presiding judge, the Honorable A. S. Henderson, asked if there were anyone within the hearing of his voice

who would like to place a bid on the 495 shares of stock of Elranco, Inc., and the promissory note in the amount of $81,631.12, in favor of the deceased against the Elranco, Inc.

In support of the petition for confirmation, Mr. C. D. Brown, assistant trust officer of the coadministrator, First National Bank of Nevada, was called to the stand. Mr. Brown stated that the estate was in need of immediate cash and testified that the approximate amount of debts of the estate was the sum of $160,949.94.

Mr. Kermit Moe, a certified public accountant of Las Vegas, Nevada, was next called to the stand, and stated that the book value of the 495 shares of stock of Elranco, Inc., was $71,961.67. The actual price bid for said stock by Beldon R. Katleman, the purchaser, was $102,868.88. The balance of the purchase price, $81,631.12, was represented by the note in question.

Upon the conclusion of the testimony of Mr. Brown and Mr. Moe, the hearing was continued until July 10, 1952, at the request of the coadministrator, Liberty Katleman. On July 10, 1952, Liberty Katleman filed a document entitled "Suggested Administration of the above entitled estate by Liberty Katleman, Co-administrator." The essence of Liberty Katleman's suggested plan, was for her to borrow the sum of $50,000 and to use said sum to pay certain liabilities of the estate, which she claimed amounted to a total of $49,401.31.

During the course of the hearing it developed that the corporation, Elranco, Inc., leased the hotel premises it occupied, and that it did not own said premises.

At the completion of the said hearing on July 10, 1952, it was again recessed and continued to July 14, 1952, at which time a further hearing was had, and at which time the court made an order confirming the sale of said personal property by the estate to Beldon R. Katleman. Thereafter, on the 10th day of September, 1952, the district court filed an amended order confirming sale of personal property. The court found that the

estate was indebted at the time of said sale in the total sum of $160,949.94.

On September 26, 1952, Liberty Katleman, as an heir, and William G. Ruymann, attorney for Jennifer Lynn Katleman, a minor heir, filed a notice of intention to move for a new trial, and to set aside the order confirming the sale and the amended order confirming the sale, on the following grounds:

(1) Irregularity in the proceedings of the court and of the First National Bank of Nevada, coadministrator, and irregularity in the order and amended order of the court, and abuse of discretion by which Liberty Katleman, coadministrator, and Jennifer Lynn Katleman, minor heir, were prevented from having a fair trial.

(2) Accident or surprise, which ordinary prudence could not have guarded against.

(3) Newly discovered evidence material for the party making the motion, which she could not with reasonable diligence have discovered and produced at the trial.

(4) Insufficient evidence to justify the decision of the court, and that the decision of the court was against law.

(5) Errors occurring at the trial, and excepted to by Liberty Katleman and Jennifer Lynn Katleman, minor heir.

In support of the notice of intention to move for a new trial, Liberty Katleman submitted her own affidavit, the affidavit of M. L. Josephs, and the affidavit of Martin L. Clemens. Thereafter a hearing was held on these motions, and evidence taken on the issues raised.

At the time of the hearing on the motion for new trial, the appellant raised for the first time, the following points, none of which had previously been at issue on the hearing for confirmation of sale, that:

(1) Notice of intention to sell the stock and note, and the posting thereof, were allegedly defective.

(2) The purported sale was allegedly not a public sale to the highest bidder, and was, therefore, invalid.

The lower court, at the conclusion of the hearing on

these motions, denied the motion for new trial, and the motion to set aside the order confirming sale. The appellants have appealed to this court from the order and amended order confirming sale and from the order denying motion for new trial. They have also appealed from the order refusing to set aside said order and amended order of confirmation.

Errors relied upon by the appellants in their appeal are as follows:

(1) The court erred in confirming the purported sale, which was invalid for want of petition for order of sale.

(2) The notice of intention to sell, and the posting thereof, were both fatally defective.

(3) The purported sale was not a public sale to the highest bidder, and consequently was invalid; and

(4) The court abused its discretion in confirming the purported sale.

The errors will be discussed in order as listed.

Appellants contend that the order of confirmation of sale was invalid because the coadministrator herein failed to file a preliminary petition for authority to sell the personal property and failed to have an order entered directing the sale of the personal property to be made.

The present statutes do not contemplate a petition for order of sale of personal property. The procedure now outlined by the statutes is for an administrator to notice the intention to sell the property, and when bids have been made, and a sale has been made to the highest bidder, report to the court of the same shall be made, and a petition for confirmation shall be filed, after which time objections may be made. The question of the necessity for the sale can be determined at the time of the hearing of such report and petition, and the objections made and filed thereto.

Although the sale is made to the purchaser at the time for which the sale has been noticed, title to the property does not become vested in said purchaser until

such time as the sale has been confirmed by the court. See N.C.L.1931–1941 Supp., secs. 9882.139, 9882.140, 9882.153 and 9882.154. These sections correspond to the similar sections in the state of California, as the California statutes are now amended. The Supreme Court of California in the case of In Re Benvenuto's Estate, 183 Cal. 382, 191 P. 678 at 679, held as follows:

"The effect is that a preliminary order of the court is no longer required in order to authorize the administrator or executor to negotiate a sale of the property of the estate for the purposes and reasons for which a sale is authorized by the section."

See also: Marlenee v. Brown, Cal.App., 128 P.2d 137, at pages 140, 141, where it is stated:

"Under the statute in force now and at the time of these proceedings, where a sale of real property of the estate is necessary to pay debts, legacies, family allowance or expenses, an executor can make such a sale without any preliminary proceedings other than a notice of sale." (See 21 Cal.2d. 668, 134 P.2d 770.)

Appellants contend that a petition was required by the provisions of sec. 9882.143, N.C.L.1931–1941 Supp., which reads as follows:

"If the executor or administrator neglects or refuses to sell any property of the estate when it is necessary or when it is for the advantage, benefit and best interests of the estate and those interested therein, or when the executor is directed by the will to sell the same, any person interested *may* petition the court for an order requiring the executor or administrator to sell. The clerk shall set the petition for hearing by the court, and notice thereof must be given to the executor or administrator by citation served at least five days before the hearing."

The appellants' position is that since Liberty Katleman did not join in the notice of intention to sell, steps should have been taken under this section to secure an order of sale.

An examination of the record in the case will show

that at the time of filing by the First National Bank of Nevada, of its notice of intention to sell, Mrs. Katleman, coadministrator, was absent from the state of Nevada. Sec. 9882.44, N.C.L.1931–1941 Supp., reads in part as follows:

"* * * When there are two executors or administrators the acts of one alone shall be valid if the other is absent from the state, or for any cause is laboring under any legal disability. * * *"

In the case of Wheeler V. Bolton, 54 Cal. 302, it is stated:

"If one of two executors be absent from the state, the other can administer, and his accounts can be settled and a distribution be had. The presence of Adams was not necessary. Code of Civil Procedure, sec. 1355."

It therefore appears that the First National Bank of Nevada had authority to file the notice of intention to sell personal property at public sale, to institute the sale of the property, whether real or personal, belonging to the estate, if, in their opinion, they determined that the sale of such property was necessary, and owing to the fact that Mrs. Katleman was absent from the state there was no reason for the filing of any petition to compel her to sell the property as her coadministrator alone had that power.

In any event, Mrs. Katleman had the same right on the hearing to confirm the sale, to resist the sale, as she would have had on a petition to compel the sale. The primary issue in each case is the same; that is, what is for the best interests of the estate. She had a hearing on that issue, she had a continuance for some seventeen days to secure counsel and to secure further evidence, and to propose a plan which would avoid the necessity of the sale.

Thereafter, Mrs. Katleman was present in court,

represented by counsel, and filed a petition seeking an order permitting the estate to borrow the sum of $50,000 and presented evidence thereunder. The court, after hearing all of the evidence submitted in support of the petition for confirmation of sale and the petition for authority to borrow, deemed it was for the best interests of the estate that the stock be sold to Beldon R. Katleman. It also developed on the hearing that Elranco, Inc., merely leased the hotel premises it occupied and did not own them. The court stated:

"That is what I don't like. If the stock was worth a lot of money I don't see why there aren't other bidders. It was open to everybody. There is no question about the legality of the sale. That is the question for the court, because 495 shares of stock of the Elranco does not represent anything but a gambling syndicate that has a lease. If they owned the property it would be a different proposition. They don't own it, the evidence shows. There is a gambling establishment, a hotel and restaurant. I think the bank made the sale regularly and lawfully and legally. I don't think there is any question where that is concerned."

From the foregoing we are of the opinion that the lower court exercised its sound discretion and committed no error in confirming the sale of the Elranco, Inc. stock and note to respondent, Beldon R. Katleman.

The second assignment of error is that the notice of intention to sell, and the posting thereof, were both fatally defective.

Appellants contend that inasmuch as the letters of administration in this estate were issued to the First National Bank of Nevada, Las Vegas, Nevada, such notice of intention to sell personal property and the petition for confirmation of sale should have been signed by the First National Bank of Nevada, Las Vegas, Nevada, in lieu of First National Bank of Nevada, Las

Vegas Branch. We are of the opinion that such contention of appellants is without merit. The First National Bank of Nevada, Las Vegas Branch, is not a different person from the First National Bank of Nevada. It is one and the same corporation. The corporation is the administrator and the fact that it carries out its functions by one agent or another would be immaterial, for it is the corporation as such, the corporate entity, that is the administrator. It is immaterial whether the bank carries out its functions as administrator through its Reno office or its Las Vegas office. The bank itself is the coadministrator and not its agents. The First National Bank and the First National Bank, Las Vegas Branch, are one and the same person. Both respondents and appellants recognize this in their various designations in the record.

It is further contended that the notice of intention to sell was defective in that the affidavit of posting should have described the places where the posting took place as public places. In our opinion the posting of the notices fully complies with the law. Sec. 9882.153, N.C.L.1931–1941 Supp., provides personal property may be sold only after public notice is given for at least ten days by notices posted in three public places in the county in which the proceedings are pending, or by publication in a newspaper in such county, or both, as the executor or administrator may determine. The record shows a publication for the requisite time, which publication alone would have been sufficient. However, in addition thereto, three copies of such notice were posted, one at the county courthouse, one at the city hall, and one at the police station, all in the City of Las Vegas, County of Clark, State of Nevada. The lower court found these notices to have been posted according to law. It has been held many times that the county courthouse, city hall and police station are all public places. See Walker v. Sundermeyer, 271 Mo. 579, 197 S.W. 102,

2 A.L.R. 1008. See also, Roach v. City of Eugene, 23 Or. 376, 31 P. 825.

The third assignment of error is that the purported sale was not a public sale to the highest bidder, and consequently was invalid. The contention of appellants is that since the sale was made subject to the bylaws of Elranco, Inc., a Nevada corporation, said sale was restricted, and due to such restrictions, was not a public sale, and that the assistant trust officer who conducted the sale, at the time of the sale stated, "This sale is restricted by the by-laws of the corporation." There is a conflict in the evidence as to whether the statement attributed to the assistant trust officer was ever made.

The lower court found the sale to have been a public one, and on the disputed question of fact its finding is conclusive. However, even if the statement had been made to the effect that the sale was subject to the bylaws of the corporation, this statement would not have rendered the sale other than a public sale. Such a sale is one where the public is invited to participate and given full opportunity to bid on a competitive basis for the property placed on sale, which is sold to the highest bidder. See note on what constitutes a public sale, 4 A.L.R. 2d, page 575. According to the record there was no evidence given at the time of the hearing on the petition for confirmation of sale, or the motion for a new trial, that the sale was not held in a public place where more than one person had an opportunity to bid on the stock.

The fourth assignment of error is that the court abused its discretion in confirming the sale. By sec. 9882.139 N.C.L.1931–1941 Supp., it is provided:

"In selling property to pay debts, legacies, family allowance or expenses, there shall be no priority between personal and real property. When a sale of property of the estate is necessary for any such purpose, or when

it is for the advantage, benefit, and best interests of the estate and those interested therein that any property of the estate be sold, the executor or administrator may sell the same, either at public auction or private sale, using his discretion as to which property to sell first, except as provided by sections 135 and 136 of this act."

Under this statute, the questions before the lower court on the hearing of the order for confirmation were whether the sale was necessary and whether it was for the benefit, advantage and best interests of the estate and those interested therein. In determining this question, the lower court was entitled to exercise its best discretion under the facts. See Nielson's Estate v. Nielson, et al., 107 Utah 564, 155 P.2d 968, at page 974.

Evidence in the lower court showed, and the court found that at the time of the hearing the estate owed the First National Bank of Nevada $37,276.37 on an overdraft; that there was a judgment of $11,260 against the estate and held by Beldon R. Katleman; that there was due to Elranco, Inc. $863.94; that there was payable to Mary Katleman, a former wife of the decedent, under a certain separation agreement, $95,548.63. It estimated the balance of the costs of administration and attorneys' fees as $16,000. This represents a total of $160,949.94. To satisfy these claims, the estate had on hand no cash. It held the Elranco, Inc. note of $81,631.12, the 495 shares of stock of Elranco, Inc. which were sold along with the note appraised at $96,368.86, and other assets of $36,250. It was therefore obvious that if the creditors were to be paid, the note and the Elranco, Inc. stock would necessarily have to be sold, as the remaining assets were less than 25 percent of the obligations of the estate.

The argument offered by appellants affecting the question of the necessity of sale was that presented in the lower court, and that is here urged, is that if time were given, Mrs. Katleman could borrow $50,000 on the security of the stock, and that by delaying the administration

until the Elranco note became due, another $81,000 plus could be realized to satisfy creditors. The note of Elranco, Inc. was due in 1953. These amounts, if realized, would have still been insufficient by a considerable amount to pay off the creditors' claims, and the stock would then have been subject to the lien for the loan of $50,000. The proposed plan was not looked upon with favor by the lower court. The Elranco, Inc. is the lessee, not the owner, of a large hotel in the Las Vegas area and is engaged in the gambling business. The lower court pointed out that the 495 shares of stock of Elranco, Inc. did not represent anything but a gambling syndicate that had a lease; the corporation was simply the lessee of a gambling establishment, hotel and restaurant. The lower court was therefore presented with the problem of whether or not it should risk the chances of creditors losing at least a part of their claim in the future by reasons of the hazards of an uncertain enterprise, or whether to confirm the sale which would insure the payment of all creditors in full and leave a substantial amount for the heirs.

The only other matter involved on the hearing, therefore, was the fairness of the price for the stock. The stock was appraised for $96,368.86. The testimony of the certified public accountant employed by the First National Bank of Nevada to investigate the books of the corporation reported the book value of the stock to be $71,961.67. The actual bid price of the purchaser at the sale was considerably in excess of both of these figures and amounted to $102,868.88. There was other contrary evidence on the value of the stock. Mrs. Katleman stated that she felt the stock was worth $250,000.

On the hearing on the order for confirmation on June 24, the court on two different occasions asked if there were any other bidders that desired to bid on the stock. No further bid was forthcoming.

In the case of In Re Scott's Estate, 172 Cal. 485, 157 P. 242, the court held that whether or not the property is sold for a price disproportionate to its value is one

which is always within the sound discretion of the court. It must consider all the facts of the case, including the value and condition of the estate, the necessity for funds, the state of the market, and all other matters bearing on the question.

The lower court had before it at the time of confirmation the question of the best interests of the estate, meaning all of the heirs and creditors of the estate at the time the sale was made. It had before it the problem of whether to risk the creditors' interests in an attempt to secure a higher price for the stock at a later date without having any further bidders on the scene. It was within its discretion to approve or disapprove the sale, depending on the best interests of the entire estate.

No errors appearing and no abuse of discretion having been shown, the orders of the lower court are affirmed.

The respondents are awarded their costs.

MERRILL and BADT, JJ., concur.

ON PETITION FOR REHEARING

May 14, 1954.

*Per Curiam:*

**Rehearing denied.**