UNION & MERCANTILE TRUST COMPANY *v.* HARNWELL.

Opinion delivered April 16, 1923.

1. BILLS AND NOTES—TRANSFER AS SECURITY FOR ANTECEDENT DEBT. —One who receives a negotiable note before maturity as collateral security for a preexisting debt may be a holder for value in due course of business.

2. PLEDGE—RIGHT OF PLEDGEE TO SELL.—A contract of pledge providing that the pledgee may sell the thing pledged at public or private sale did not contemplate that the pledgee could sell to itself at private sale.

3. PLEDGE—EFFECT OF FAILURE TO PAY DEBT.—The failure of a pledgor who has pledged property as security for a debt to pay the debt at maturity does not vest title to the property pledged in the pledgee.

4. PLEDGE—MODE OF SALE OF PLEDGE.—In the absence of a special agreement, the sale of a pledge must be at public auction after due advertisement, so that the pledgor may see that the sale is fair and arrange to get the best price; but the pledgee may waive notice and authorize a private sale.

5. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.—Where appellant in the court below admitted that the amount of the court's decree was correct, he will not be heard on appeal to contend that the decree was erroneous in computation of interest.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Moore, Smith, Moore & Trieber* and *J. C. Marshall,* for appellant.

No proof of an agreement by the bank to give appellees $850 on their note, and, if there had been, it was without consideration. The executory agreement to make the gift, if it existed as claimed, was not consummated by the execution of writings or by the entry of a credit in the note, and was invalid. 20 Cyc. 1202, 1208; 100 Ill. App. 75; 28 Mich. 221, 42 Am. Rep. (N. Y.) ; 32 N. Y. Supp. 1103. Execution by appellee of his note for extensions for full amount of debt estops him from claiming a reduction. 111 Ark. 358; 118 Ark. 465; 126 Ark. 14; 96 Ark. 268. Another complete answer to this defense is that all evidence offered to support it was incompetent, being contradictory of the terms of the writing. 19 Ark. 690; 17 Cyc. 589. The indorsement, pledge and subsequent sale of the note, according to the terms of the collateral contract, vested the title to the note in the bank, with right to collect same in full. 94 Ark. 387; 32 Ark. 742; 95 Ark. 542; 31 Cyc. 878, 872, 880, 883; 88 F. 217; 104 F. 409; 165 F. 802; 90 A. 189; 149 U. S. 327; 76 Mo. 290; 21 R. C. L. 694; 123 U. S. 562; 54 F. 759; 45 Ark. 177.

No brief for appellees.

WOOD, J. This action was instituted by the appellant against the appellees to foreclose a mortgage on lots 1, 2 and 3, block 11, Pulaski Heights Addition, Little Rock, Arkansas. The appellant alleged that the appellees executed their promissory note on July 11, 1914, to one Harry Wirbel in the sum of $3,000, with interest at the rate of seven per cent. per annum from date until paid; that, to secure the note, Louise B. Harnwell executed her mortgage on the lots mentioned; that on October 22, 1918, the note above mentioned was duly transferred and assigned on the mortgage and on the record of the mortgage to the appellant, and that it is

now the owner of the note and mortgage; that no part of the note had been paid; that two notes were executed by the appellees to the appellant in the sum of $105 each for the interest due, one on Jan. 11, 1919, and the other on Jan. 11, 1920; that these notes bore interest at ten per cent. from due date; that the debt as evidenced by the notes was due the appellant, and that the mortgage was subject to foreclosure, and the complaint concluded with a prayer for judgment and foreclosure of the mortgage.

The appellees, in their answer, admitted the execution of the note for $3,000, and the mortgage, but denied that the appellant was the owner thereof. They alleged that the appellant loaned to Harry Wirbel $2,150, and that the note and mortgage were never transferred and assigned to the appellant as alleged, but were still the property of Irma Wirbel; that the appellant, after Harry Wirbel applied to be adjudged a bankrupt, sold said note and mortgage to itself without authority and without notice to the owner, and have since claimed to be the owner by reason of such sale; that the appellant collected interest at 7 per cent. from the appellees, and had not accounted for the same. They set up the plea of usury (which has been abandoned); that the appellees had a distinct understanding with the appellant that it would be satisfactory to pay $2,150, the amount of Wirbel's note, and appellant acknowledged it was entitled only to that sum; that later appellant demanded $3,000 with interest. Appellees refused to pay, and demanded that the appellant bring suit, or they would do so; that the appellant has never paid or accounted to Wirbel or to the appellees for the interest paid subsequent to the bankruptcy of Wirbel, or two installments of interest prior thereto. That the appellant is not entitled in any event to more than $2,150 and interest, and they prayed that the excess interest be refunded.

On the 11th of July, 1914, Mrs. Louise B. Harnwell executed a promissory note to Harry Wirbel, indorsed

by C. P. Harnwell, in the sum of $3,000, bearing seven per cent. interest from date until paid, payable in four years after date, interest payable annually. This note was secured by a mortgage on lots 1, 2 and 3, block 11, Pulaski Heights Addition, Little Rock. Harry Wirbel borrowed from the appellant the sum of $2,150, evidenced by his promissory notes, one dated Feb. 15, 1917, for $1,650, and the other dated March 5, 1917, for $500. These notes bore interest from maturity at ten per cent. per annum until paid, interest payable semi-annually. Each of the notes contained a recital showing that the note of Mrs. Harnwell for $3,000 was pledged to the appellant as collateral, and that the collateral note was secured by lien on the lots above mentioned. Each of the notes also contained the following recital: "It is hereby agreed that, upon the nonpayment of this obligation, or any installment of interest thereon, the said company or holder thereof may sell the same at public or private sale, for cash or on credit, as a whole or in parcels, at any place in the city of Little Rock, without notice, and said company or holder may, at any such sale, purchase the same, or any part thereof, for its or his own account, and, after deducting all costs of sale, the balance of the proceeds shall be applied to this obligation," etc. The interest accruing, and paid to the appellant on the Harnwell note, was applied on the Wirbel note, and part of the excess was applied on the principal of the Wirbel note, and the sum of $152.33 was sent to Wirbel. On the 19th of November, 1917, appellant wrote to Wirbel, in substance telling him that, by reason of the default in the payment of his notes, which were then some months past due, it would offer for sale to the highest bidder on Nov. 30, 1917, at ten o'clock a. m., at the office of the bank, the collateral note of Mrs. Harnwell for $3,000, describing the same as above, and would apply the proceeds derived from the sale to the satisfaction of its debt.

After testifying to the above facts, the assistant secretary of the appellant further stated that the appellant carried out the sale, at the time designated, in the lobby of the bank, and the note was bid in by representatives of the bank for the amount of its debt, which was $2,030.15 after applying all just credits. The price paid for the collateral was a fair one. Neither Harnwell nor Wirbel was there to bid on it or to redeem it. The sale was conducted fairly and without fraud, and in compliance with the terms of the contract. Two officers of the bank and one or two others were present at the sale. The contract did not require the appellant to make a public sale, *but it made it public to that extent*. Appellant gave the notice that was required. The appellant did not notify the Harnwells, but only notified Wirbel.

The secretary of the appellant testified that the collateral was bought in for less than its face value. The appellant paid a fair price for the collateral at that time. Appellant would rather have had the money than the collateral.

Moorhead Wright, president of the appellant, testified that Wirbel wanted to sell the appellant the collateral note of Harnwell, but appellant did not want to buy it, and the question with appellant was how much they would lend on it. Witness was familiar with the sale of the collateral and its purchase by the bank; thought the amount paid was the full value of the note at that time. The property in the mortgage had increased considerably in value since appellant purchased the note five years ago.

Harnwell testified that, without notice to witness, who lived in Little Rock and passed the bank many times a day, and without notice to witness' wife, the appellant, on Nov. 30th, sold to itself witness' note and mortgage for the amount of the Wirbel notes. When witness' note to Wirbel became due in 1918, witness went to the bank to see about paying or renewing it, and was told that his note had been sold under the collateral agree-

ment. This was the first witness knew that the bank claimed title to the note and mortgage. Witness objected, and told the bank that he was perfectly willing to pay the $2,150. He said he could go out and borrow it somewhere else, or renew it with them, but he didn't expect to have to pay the $850 that didn't belong to the bank. The testimony of Harnwell and the Wirbels was to the effect that the $850 had been given to Harnwell by Mrs. Wirbel for legal services.

The conclusion we have reached upon the facts as above set forth makes it unnecessary to set out in detail further testimony in the record. The court found that the appellees were indebted to the appellant in the sum of $2,328, and entered its decree for that sum, with directions that same be paid out of money from the sale of the lots in controversy, which had been deposited in the registry of the court, and that the balance be paid to the appellees. From that decree appellant prosecutes this appeal, and the appellees cross-appeal.

1. The first and principal question for decision is whether or not the appellant is the owner outright of the Harnwell note to Wirbel. Wirbel pledged to the appellant Mrs. Harnwell's note as collateral to the loan which he had obtained from the appellant. Appellant therefore was the holder of the Harnwell note for value in due course. *Exchange National Bank* v. *Coe*, 94 Ark. 387. Wirbel could not thereafter transfer any interest he had in Mrs. Harnwell's note to Mrs. Wirbel, or any one else, so as to defeat whatever rights the appellant might thereafter acquire in such note, under the contract by which Wirbel had pledged such note to appellant as collateral. The contract was that, upon the nonpayment of Wirbel's note to appellant, or any installment of interest thereon, the appellant might sell Mrs. Harnwell's note at public or private sale, for cash or on credit, at any place in the city of Little Rock, without notice, and at such sale might purchase the same for its account.

Mr. Mechem defines public and private sales as follows: "A public sale is one made at auction to the highest bidder. A private sale is one not made by public auction, but by private negotiation. Private sales are always voluntary, but forced sales are always public. A voluntary sale may also be public, at the pleasure of the owner." Mechem on Sales, § 10.

Mr. Benjamin says: "That it requires parties competent to contract and mutual assent in order to effect a sale, is manifest from the general principles which govern all contracts." Benj. on Sales, p. 2.

In *Cage* v. *Black,* 97 Ark. 613-17, we said: "In order to constitute a binding contract of sale there must be a mutual assent of both parties to the essential terms of the agreement." And in *Scoggin* v. *Morrilton,* 124 Ark. 585, we said: "A sale is a contract for the transfer of property from one person to another, for a valuable consideration. * * * A sale may be proved by circumstances as well as by affirmative evidence, but, where it is sought to prove a sale by circumstances, they must warrant the inference that there was a seller and a purchaser, a thing to be sold, and compensation in some form from the purchaser to the seller for the article sold." See also other cases cited in 4 Crawford's Digest, p. 4439, § 1.

Applying these elementary principles to the facts of this record, it is clear that there was no sale, either public or private, of the Harnwell note, according to the terms of the contract by which Wirbel pledged said note to the appellant as collateral. There was no private sale, because there was no negotiation whatever by the appellant, the seller, with any third party as a prospective buyer for the sale and purchase of the Harnwell note. The contract of pledge certainly did not contemplate that the appellant, as pledgee of the property, could purchase the collateral itself, paying as a consideration therefor Wirbel's debt to it, without making any effort whatever to sell the collateral to a third party.

The contract of pledge provided that the appellant, as pledgee, could sell the Harnwell note at private sale, but this contemplated a sale to a third party and not to appellant itself. There is nothing in the contract to justify the conclusion that the parties to the contract of pledge intended that the appellant should have the power to transfer to itself title to the Harnwell note by simply satisfying Wirbel's debt, without any endeavor to see whether third parties were willing to pay more for it. The appellant, in making the sale of the Harnwell note, was a trustee for Wirbel, its debtor and pledgor, and it was appellant's duty to adopt all reasonable modes of procedure in order to render the sale most beneficial to the debtor. It could not discharge this duty by simply resolving in its own mind that the property pledged was worth no more than the debt of the pledgor, and that therefore it would sell the Harnwell note to itself by satisfying this debt and transferring the pledge, so to speak, from one pocket to the other. See *Fitzgerald* v. *Blocher,* 32 Ark. 742, and other cases there cited. See also *Hagan* v. *Continental Nat. Bank,* 182 Mo. 319, 81 S. W. 171. Wirbel's failure to pay his debt at maturity did not *ipso facto* vest title to the pledged property in the appellant, and appellant, by proceeding as it did, could not divest title out of Wirbel, the pledgor, and vest it in itself, because there was no effort whatever, as we have stated, to consummate a private sale of the Harnwell note.

The undisputed evidence shows that appellant attempted to make a public sale of the collateral under the contract of pledge. But its effort along this line was abortive because no notice whatever was given to the public of the time and place of sale. No opportunity was given the public to bid at such sale. There was no auction of the Harnwell note, which was necessary to constitute a public sale thereof. True, the contract provided that, upon nonpayment of the Wirbel obligation, the appellant could sell the Harnwell note "at public or

private sale, at any place in the city of Little Rock, without notice.'' This language is ambiguous, but it necessarily means that, if the sale were private, it could be made without notice to the pledgor, Wirbel. The parties could not have meant that, if the appellant elected to sell at public sale, no notice of the sale would have to be given to the public. Such a construction of the contract of pledge would render the same contradictory within itself, because a public sale could not be conducted unless the public were invited to participate therein. Such construction of the contract would render the same wholly meaningless. In the absence of a special agreement, the sale of a pledge must be at public auction, after due advertisement, so that the pledgor may see that the sale is fair, and arrange to get the best price. The pledgor may, by agreement, waive such notice to himself and authorize a private sale. But where the contract expressly provides that the sale may be public or private, as it does here, if the pledgee chooses to make the sale public, then notice of such sale must be given the public in the usual and customary manner for sales of such pledged property. 31 Cyc. 878. See *Fitzgerald* v. *Blocher, supra; Fitzpatrick* v. *Bank,* 95 Ark. 542; *Foot* v. *Bank,* 54 Pac. 104.

As we construe the contract of pledge under review, it authorized either a public or private sale, and if the sale be private, then it may be made without notice to the pledgor; if public, then notice to the public of the time and place of such sale is necessary, and the sale must be made at auction. As we stated in the beginning, the undisputed evidence shows that there was no sale, either public or private, of the Harnwell note. Since there was no sale according to the terms of the contract of pledge, the appellant acquired no title whatever to the Harnwell note. The court was correct in finding that Harnwell owned the equity in the Harnwell note which had been given him by Mrs. Wirbel for legal services rendered. Therefore it follows that the trial

court was correct in entering the decree in favor of the appellant against the appellees for the amount of the indebtedness of Wirbel to the appellant on the day the decree was rendered, and in decreeing the balance in the registry of the court to Harnwell.

2. The appellees, on their cross-appeal, contend that the amount of the court's decree, $2,328, is erroneous. In their brief they make a computation of the amount due, computing the interest on the method of partial payments and also without such method. According to either of these methods, they contend that the amount of the court's decree was erroneous. But the record fails to show that the appellees introduced, or offered to introduce in evidence at the trial of the cause, the figures and methods of computation which they now insist prove that the amount of the decree is erroneous. On the contrary, during the cross-examination of the witness Harnwell for the appellees, the following occurred: "Ques.: You are not prepared to dispute, and do not dispute, the account of these transactions that were kept by the bank, who did keep books—you wouldn't set up your memory against the books, would you? Ans.: It isn't my memory—I have the checks here. Ques.: You haven't shown that there was anything wrong with the figures they have shown here, have you? Ans.: No, not at all."

It thus appears that Harnwell in his testimony stated that he had not shown anything wrong with the bank's figures upon which the court bottomed its decree. While he stated he had his checks, the record does not show that he introduced, or offered to introduce, the checks in evidence, and does not show that the checks, if introduced, would have altered the result as shown by the books of the appellant. It is too late now to introduce figures and calculations (which were not before the trial court) to show that the amount of the court's decree

was erroneous. Since we have concluded that there was no sale of the Harnwell note, other interesting questions so elaborately argued in briefs of counsel pass out.

The decree is in all things correct, and it is therefore affirmed.