THE DELAY FIRST NATIONAL BANK & TRUST COMPANY, APPELLEE, v. JACOBSON APPLIANCE COMPANY, ALSO KNOWN AS JACOBSON APPLIANCE CO., ET AL., APPELLANTS.

243 N. W. 2d 745

Filed June 30, 1976. No. 40341.

Jerrold L. Strasheim of Venteicher & Strasheim, and Lyle Winkle of Winkle & Winkle, for appellants.

Deutsch & Hagen, for appellee.

Heard before WHITE, C. J., SPENCER, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

SPENCER, J.

The DeLay First National Bank & Trust Company, plaintiff and appellee, hereinafter referred to as bank, recovered a deficiency judgment against defendant-appellant, Jacobson Appliance Company, a corporation,

hereinafter referred to as defendant, and the guarantor of its obligation to the bank, Victor Jacobson, who will be referred to as Jacobson. We discuss only three of the many issues raised. (1) Was proper notice of sale given to defendants? (2) Did bank's procedures meet the test of commercial reasonableness? (3) Was there sufficient evidence to submit defendants' counterclaim to the jury? We reverse.

Defendant, which was in the retail appliance trade, was organized in 1948 by Victor Jacobson, who was its sole stockholder and chief executive officer. Prior to 1969, bank and defendant entered a floor-plan financing scheme. Bank would advance funds directly to the appliance manufacturer or distributor for appliances shipped to defendant. Defendant would give bank a list by serial number of the items so purchased. Bank noted these on a trust receipt document signed by defendant, giving bank a security interest in the items. When these items were resold, the amount financed was to be remitted to bank.

On occasion, bank would conduct a floor check of defendant's showroom to determine whether remittances had been received for all items sold. A check late in 1972 revealed defendant had not remitted for approximately $6,000 in merchandise. Defendant borrowed $10,000 from the bank, paid the amount due on the floor-plan financing, and used the balance for operating expenses. This loan was evidenced by a document styled "Installment Note and Security Agreement." It was secured by giving bank an interest in "all new & used appliances, parts, accessories, all machinery, equipment, furniture, fixtures, inventory accounts and contracts receivable now owed or hereafter acquired and proceeds." This all-inclusive language gave bank an interest in all the defendant's inventory not covered by the floor plan.

After this loan, bank began monthly floor checks of defendant's showroom. At each check the list would be turned over to the defendant for reconciliation. On

some occasions bank had posted a remittance against the wrong item. On others, the floor check had missed items in the store or in the warehouse or building annex. When the reconciliation was complete, defendant would write a check to bank for any items not located or for which remittance had not been made.

In April of 1973, because of a contemplated trip to Ireland, Jacobson added the name of an employee, Lori Grosbeck, to the signature card for defendant's checking account. Before leaving, Jacobson left with Mrs. Grosbeck a list of instructions leaving her in charge of the store during his absence. She was also given specific instructions concerning what checks she could write while he was in Ireland.

Jacobson returned from Ireland early in May 1973. The latter part of May, Jacobson met with a General Electric representative and bank personnel to discuss current problems. Because the service work for the store was behind and because things were generally in confusion, Jacobson closed the store for a short period to straighten things out and to allow the employees a vacation.

The store was reopened June 4, 1973. Bank requested a floor check and one was made. Seventy items were discovered missing. Bank records indicated $14,942.59 had been loaned against these items. Representatives of bank were unable to reconcile the list with defendant.

On June 13, Jacobson was hospitalized in a psychiatric ward in Council Bluffs, Iowa, after an incident of alleged misconduct. Before leaving for the hospital, Jacobson told Lori Grosbeck, "Take care of it just like you have for me before."

After learning of Jacobson's hospitalization, bank made another floor check and confirmed the earlier shortage. A bank representative conferred with Mrs. Grosbeck and demanded payment. After allowing Mrs. Grosbeck to write the weekly payroll checks, defendant's bank account was closed out by applying the balance on de-

fendant's loan. Over $5,000 was credited on the $10,000 operating loan. Bank took possession of the records on defendant's accounts receivable. It had a local transportation company pick up all property covered by its security instruments. By June 22, the store was empty except for certain items claimed by another creditor.

Bank then proceeded to liquidate the inventory and accounts receivable of defendant. It contacted General Electric with whom defendant had an agreement to take back all crated merchandise at 90 percent of invoice price, less freight. The General Electric items were returned and bank was paid $6,066 for them. Bank made arrangements with a local appliance store to handle the new, uncrated, unfloor-planned appliances at 20 percent of retail and the floor-planned items at 80 percent of the floor-planned amount. Most of the appliances had retail tags on them. Where there were none, the retail price was determined and marked on the appliance.

This is an action to recover a deficiency judgment, after the sale or disposition of the property taken by bank under its security instruments. It is controlled by the rule enunciated in Bank of Gering v. Glover (1974), 192 Neb. 575, 223 N. W. 2d 56. We there said: "Compliance with the Uniform Commercial Code for notification as to the disposition of collateral is a condition precedent to a secured creditor's right to recover a deficiency."

Section 9-504(3), U. C. C., provides: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time*

*and place of any public sale or reasonable notification of*
*the time after which any private sale or other intended*
*disposition is to be made shall be sent by the secured*
*party to the debtor,* and except in the case of consumer
goods to any other person who has a security interest
in the collateral and who has duly filed a financing
statement indexed in the name of the debtor in this
state or who is known by the secured party to have a
security interest in the collateral. The secured party
may buy at any public sale and if the collateral is of a
type customarily sold in a recognized market or is of a
type which is the subject of widely distributed standard
price quotations he may buy at private sale." (Em-
phasis added.)

Both defendant and Jacobson, its guarantor, are debt-
ors within the meaning of section 9-504(3), U. C. C.
Our first consideration in construing section 9-504 is to
consider the reason for the notice provision. Obviously,
it is intended for the benefit and protection of the debtor.
If he is given notice, he will have at least an opportunity
to protect his interests by redemption, finding prospec-
tive purchasers for the property, or otherwise. Even if
it might be determined he could not have protected his
interest, the law requires he be given the opportunity.

What we said in Bank of Gering v. Glover, *supra,* is
pertinent herein: "The language of subsection (3) of
section 9-504, U. C. C.: '* * * reasonable notification of
the time after which any private sale or other intended
disposition is to be made *shall* be sent by the secured
party to the debtor,' (italics added) would presume a
mandatory obligation. We have heretofore held that un-
less the context indicates otherwise, the use of the word
'shall' purports a mandatory obligation. See Anderson
v. Carlson (1961), 171 Neb. 741, 107 N. W. 2d 535, in
which we pointed out section 49-802, R. R. S. 1943, pro-
vides: 'Unless such construction would be inconsistent
with the manifest intent of the Legislature, rules for
construction of the statutes of Nebraska hereafter shall

be as follows: (1) When the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed.' "

Inherent in our holding in Bank of Gering v. Glover, *supra,* is the rule that the burden of proof is on the secured party to prove compliance with the statutory requirements of notice and reasonableness of notice. There were five separate dispositions of the property seized which come within the notice requirement. They are separately discussed.

The crated merchandise was shipped to General Electric July 20, 1973. It is undisputed that no prior notice was given to Jacobson, and the sufficiency of the notice given to defendant is questionable. Bank's representative testified he orally visited with Mrs. Grosbeck about it. Bank introduced exhibit 22 to show Mrs. Grosbeck's authority. It reads as follows: "XII Bill is to wait on customers. Lori takes the overflow. *Knock when office door is closed. XIII Lori & Bill Attn. Vic - Lori - Bill. Anything that is on order after 4 weeks offer to loan them a similar one to use until theirs arrives. XIV Lori & Willard You are in charge when I am gone. Please work out your service problems together. Thanks Vic XVI Lori — Please hand Bill a dust cloth on Tues. & Wed. and help him dust. Have him work with you. Thanks — Vic Duplicate of #XIII — Sorry! Ha! Ha!"

Whether Mrs. Grosbeck was an agent of defendant for the purpose of receiving notice we need not decide because there is no evidence to establish any agency relationship on her part for Jacobson. Assuming, however, a viable agency relationship, an oral communication of notice of either public or private sale is not the method provided by the Uniform Commercial Code. The wording in the statute is: "Reasonable notification * * * shall be sent." The word "send" is defined in section 1-201 (38), U. C. C., as follows: " 'Send' in connection with any writing or notice means to deposit in

the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending." The requirement of a written notice eliminates all possibility of dispute as to whether a notice was actually given. It also establishes what notice was given.

On the sale of used merchandise to Larry Greenaugh for $540, the following letter, dated September 11, 1973, was sent to Jacobson at Columbus:

"Dear Mr. Jacobson:

"We have a bid of $540.00 for the following used merchandise:

"10 used televisions

"1 40″ range

"2 washers

"2 dryers

"3 portable vacuam (sic) cleaners

"1 central vacuam (sic)

"It is set that these items will be sold Saturday, September 15, 1973 at 12:00 O'Clock P.M. If you are interested, please contact us prior to that date.

"Thank you.

"Yours Truly,

"Leo A. Moschenross

"Vice-President."

It is to be noted the letter was dated September 11, 1973, advising the items would be sold September 15. Assuming prompt delivery, which is questionable on a letter mailed from Norfolk to Columbus, at best there would be less than a 3-day notice. Whether this is reasonable notice may be subject to question. In Prairie Vista, Inc. v. Casella (1973), 12 Ill. App. 3d 34, 297

N. E. 2d 385, an Illinois appellate court held that a notice mailed on April 7, for a private sale of collateral to be held on April 10, failed to give reasonable notice of sale. To constitute reasonable notice of a private sale, the notice should be sent in such time that the debtors would have a minimum of 3 business days to arrange to protect their interests.

On the sale of the three washers and three dryers to Doug Speidel, the record is devoid of any evidence of notice to either defendant or to Jacobson.

A significant portion of the merchandise was delivered to Brehmers Music & Appliance, a local appliance dealer. It was sold by Brehmers to the public. Brehmers received a 20 percent commission on the sales for its services. The only notice on this sale was by letter dated August 10, 1973, to Vic Jacobson at Columbus. It is as follows:

"Dear Mr. Jacobson:

"We are enclosing a copy of all floor plan notes showing which items have not been paid. We have received a bid of 80% of the original invoice price for the items still here.

"The other merchandise will be sold for the best price possible. The commission cost for these sales will be 20% of the purchase price.

"These items will be sold August 20, 1973 at 12:00. If we do not hear from you it will be assumed you have no interest in this matter.

"Thank you.

"Sincerely,

"Leo A. Moschenross

"Ass't Vice-President."

We have a question as to whether this is a notice of a private sale or a public one. The first paragraph would indicate that the bank was talking about a private sale for 80 percent of the invoice price. The second paragraph talks about other merchandise which will be sold for the best price possible. It gives the commission

cost for these sales which could be for a public sale. The third paragraph gives the time of the sale, but does not specify a place of sale.

Section 9-504(3), U. C. C., provides that the disposition of collateral may be made by public or private proceedings, and may be made by way of one or more contracts. The sale may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable.

In the case of a private sale, the notice need only state the time after which the collateral is to be sold. In the case of a public sale, however, it must state the time and place at which the sale will occur. The construction we put on the notice is that it described both a private and a public sale.

Actually, the items referred to in the first paragraph were sold to Brehmers at private sale for 80 percent of the invoice price. The other items were not sold, however, on August 20, 1973. Rather, they were turned over to Brehmers for sale to the public for a 20 percent commission. On August 24, Brehmers Music & Appliance advertised a 1-day sale of this merchandise to the public for Sunday, August 26, on a local parking lot. We agree with defendant that a creditor who uses a private sale form for public sales violates section 9-504(3), U.C.C. White & Summers, Uniform Commercial Code, Hornbook Series, § 26-10, p. 986. We do not agree, however, that the sale to the public for a set price was in effect a public sale.

The bank presented no evidence that it acted in a commercially reasonable manner in the actual terms of the sale. The notice set out above indicated that the sale price would be 80 percent of the original invoice price. However, in fact, the bank sold the merchandise for 80 percent of the floor-plan billing price, which was only 90 percent of the original invoice price. This then was a private sale for less than the noticed bid. We do

not discuss the questions raised as to the adequacy of the price for which some of the collateral was sold. In this regard, we call attention to the rule enunciated in First Nat. Bank of Bellevue v. Rose (1972), 188 Neb. 362, 196 N. W. 2d 507: "Under the Uniform Commercial Code, the adequacy or insufficiency of the price for which collateral is sold at private sale after default and repossession is one of the 'terms' of the sale, and is relevant along with other issues, in determining whether the sale was commercially reasonable."

Subsequent to the return of the crated merchandise to General Electric, bank sold five Admiral TV sets to Tri-State Distributing Company. No notice of this sale was given to either the defendant or Jacobson.

On balance, bank either provided no notice or questionable notice to either Jacobson or the defendant. Failure to give notice is an absolute bar to the recovery of a deficiency. As we said in Bank of Gering v. Glover (1974), 192 Neb. 575, 223 N. W. 2d 56: "If the creditor wishes a deficiency judgment, he must obey the law. If he does not obey the law he cannot secure a deficiency judgment."

The problem herein is that there was more than one sale, some of which can be upheld. We believe the intent of the Uniform Commercial Code would appear to mandate that the entire disposition of collateral by the secured party be viewed as one transaction, and that every aspect of that transaction be in accord with the requirements of the Uniform Commercial Code. To adopt any other rule would place upon the court the sometimes impossible and time-consuming task of attempting to determine the amount of recoverable deficiency as well as the amount of unrecoverable deficiency.

What we said in Bank of Gering v. Glover, *supra,* is pertinent herein: "The creditor is given several options in disposing of collateral and very minimal formal requirements. The burden on the secured creditor is to

comply with the law. The act is framed in his interest. It is not onerous to require him to give notice of the time and place of sale. In some instances it will be to the creditor's advantage to do so. On the other hand, to permit him to proceed otherwise does place an onerous burden on the debtor."

We adhere to the position we adopted in Bank of Gering v. Glover, *supra*. The right to a deficiency judgment depends on compliance with the statutory requirements. We now hold that if a creditor wishes a deficiency judgment he must comply with the law in each transaction. While this rule may seem harsh, we are persuaded by the fact that the burden is on the secured creditor to comply with the law. The act is framed in his interest. It is not onerous to require him to observe the provisions of the law.

Previous to the removal of the inventory from the defendant's place of business, bank took possession of the records on all of defendant's accounts receivable. Section 9-502 (2), U. C. C., requires the creditor to proceed in a commercially reasonable manner to liquidate accounts receivable. The record would indicate that bank did not attempt to collect all the accounts. It sent two letters on some of them, and thereafter took no further action on any of the accounts receivable.

The burden was on bank to prove that it undertook to collect from defendant's debtors in a commercially reasonable manner. Defendant argues that the record indicates bank made little or no effort to realize on the accounts receivable. Defendant further argues that this lack of effort on the part of bank resulted in a substantial decrease in the value of the accounts. We agree there is insufficient evidence in the record to sustain bank's burden of proof on this issue.

Plaintiff failed to sustain its burden of proving sufficient notice to permit the entry of a deficiency judgment against defendant and Jacobson. The motion for

a directed verdict on the issue of liability for a deficiency judgment should have been sustained.

Both defendants argue that it was error for the trial court to dismiss the counterclaim. The question as we see it is whether the evidence would support the submission of the counterclaim to the jury on defamation, tortious interference with business, or unlawful conversion and set-off. On these issues, the burden of proof was on the defendants. On the defamation issue, defendants cite McLaughlin v. F. W. Woolworth Co. (1933), 125 Neb. 684, 251 N. W. 293, as follows: "As applied to libel of one in his business or occupation, it is elementary in the law of libel and slander that defamatory words falsely spoken (or written) of a party which prejudice such party in his occupation or trade are actionable per se. Pollard v. Lyon, 91 U. S. 225, 23 L. Ed. 303. Newell on Slander and Libel (4th ed.) secs. 150, 152, states these rules as to what may constitute libel per se. The law guards most carefully the credit of all merchants and traders. Any imputation on their solvency, any suggestion that they are in pecuniary difficulties, is therefore actionable; also where any language is used of merchants and tradesmen which imputes a want of credit or responsibility or insolvency, or of common honesty. To the same effect is the text in 36 C. J. 1190, 1191."

The evidence shows telephone calls to defendant's supplier to the effect that Jacobson was sick and that his financial status was less than solid. It appears that there was truth in everything stated. Jacobson was sick by his own admissions at the time the statements were made. The status of defendant's accounts at the bank and with General Electric show that defendant's financial status was shaky. The trial court was correct in refusing to submit the issue of defamation to the jury.

One of the basic elements of tortious interference with a business relationship requires an intentional interference inducing or causing a breach or termination of the

relationship or expectancy. Bank's approach to defendant's suppliers was in connection with its notice that it would no longer floor plan their merchandise for defendant. This was a proper contact and defendant adduced no evidence which would indicate otherwise.

Finally, both defendants complain of the dismissal of the counterclaim for wrongful conversion of defendant's property. The trial court held the taking of the property was not wrongful since defendant was in default on at least one of the loan obligations. It appears to us that the defendant was in default of both the floor plan and the note obligations. We agree with the trial court the taking could not be termed a wrongful conversion. The counterclaim was properly dismissed.

From the conclusions we reach herein, it is unnecessary to consider the many other alleged errors presented. We reverse the judgment and remand the cause to the District Court, with directions to dismiss the petition for a deficiency judgment.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I dissent for several reasons. First, I cannot agree that where collateral is disposed of in a series of sales, failure to give notice of one such sale deprives the holder of the security interest of all right to a deficiency judgment and the right to rely upon a guaranty, even though all sales are conducted in a commercially reasonable manner and the lack of notice caused no loss whatever. Such a result is patently unjust and is not mandated either by the provisions of the Uniform Commercial Code or by our holding in Bank of Gering v. Glover, 192 Neb. 575, 223 N. W. 2d 56. Secondly, I find the majority opinion vague and confusing in its discussion of the differences between private and public sales. Thirdly, the opinion seems to imply that if collateral is to be sold in a series of private sales, separate notice must be given for each sale rather than the one notice which, it seems to me, the statute contemplates. Fourthly, by defining

"reasonable notification" in terms of a flat time period the court in effect amends the statute. Fifthly, the record in this case contains evidence sufficient to support a finding that all sales here involved were conducted in a commercially reasonable manner. The issue of commercial reasonableness was submitted to the jury and it found in favor of the secured party. That finding should stand.

I will briefly discuss the above objections in the order listed. The opinion imposes the ultimate in penalties against the creditor for failure to give notice of one sale, where collateral is being disposed of in a series of transactions as permitted by the code and even though notice may have been given of all other sales and all sales were held in a commercially reasonable manner. Assume, for example, that if there were a hundred large items to be sold and it was best that they be sold in a series of public sales, say in 10 lots, and notice is given of the 10 sales and all sales are commercially reasonable, however, it is then discovered that a few insignificant items are overlooked and these are sold at private sale without notice, but in a commercially reasonable manner and full value is obtained. Under the proposed rule which this case promulgates, the creditor is denied his right to a deficiency even though the debtor has not been harmed.

Lending institutions sometimes loan on insufficient collateral and in reliance on a guaranty by a responsible party. In the circumstances given in the example above, it would be unjust and ridiculous to deprive the lender of his reliance on his guaranty. The proposed rule will have a tendency to unduly restrict credit and is clearly unjust. Our holding in the Gering case does not mandate the result in this case. In the Gering case there was one sale and no notice at all.

As a reason for adopting the severe penalty the opinion says: "To adopt any other rule would place upon the court the sometimes impossible and time-consuming

task of attempting to determine the amount of recoverable deficiency as well as the amount of unrecoverable deficiency." Convenience may be a good reason for rules of procedure. The convenience of the courts is no reason at all for rules which determine the substantive rights of parties. The majority bring discredit on the court when the rule of decision is so founded.

The opinion does not clearly differentiate between public sale and private sale. Under ordinary law and under the code, public sale means sale at public auction and perhaps by sealed bids, both, of course, after the required public notice. The distinguishing characteristic of public sale is bona fide competitive bidding. White & Summers, Uniform Commercial Code, Hornbook Series, § 26-11, p. 993, Ex Parte Keller, 185 S. C. 283, 194 S. E. 15; In re Newbrough, 254 Mich. 170, 236 N. W. 233; Offredi v. Huhla, 135 Conn. 20, 60 A. 2d 779, 4 A. L. R. 2d 472; Union & Merchantile Trust Co. v. Harnwell, 158 Ark. 295, 250 S. W. 321; Katleman v. Katleman, 70 Nev. 330, 269 P. 2d 257.

There were no public sales in this case. All sales were private. The fact that Brehmer Music sold on an open lot after advertising but not by auction did not make that a public sale within the usual meaning of that term. The reference in the opinion to notice of private sale being given for a sale in fact public is mistaken.

The opinion seems to imply that if property is to be sold at private sale, then one notice before such sale to the effect that after a certain time the collateral will be sold at private sale is not sufficient. It seems to hold that there must be a special notice for each private sale. Clearly the code does not contemplate that and the opinion cites no authority for the position. The code says: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. . . . Unless collateral is perishable or threatens to decline speedily in value or is the type cus-

tomarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . .." § 9-504(3), U. C. C. The statement in the opinion, "We believe the intent of the Uniform Commercial Code will appear to mandate that the entire disposition of collateral by the secured party be viewed as one transaction," just does not stand up in face of the code language.

Collateral may consist of dozens or hundreds of items. It may be best that these be sold in a group, or it may be best that they be sold individually, or in a combination. What is commercially reasonable will depend on circumstances. If a thousand items are to be sold at numerous private sales, it would be ridiculous to require some sort of notice of each sale. Ultimately the cost of sale comes out of the debtor's pocket under the provisions of the code because he is responsible for the costs of sale. Such costs should not be unnecessarily accumulated.

What the statute contemplates in private sales is one notice after which property may be sold privately with the creditor being held to the standard of commercial reasonableness in all such sales, including price.

The opinion would hold as a flat rule that three business days notice of private sale is reasonable. That period of time may or may not be reasonable, depending upon circumstances. In any event, such a flat rule is simply an amendment of the statute which provides, "reasonable notification of the time after which any private sale or other intended disposition is to be made." The Uniform Commercial Code in some states does specify a time period. Ours does not. We have no authority to amend the statute.

One of the things that is overlooked in this case is that we have a jury verdict under proper instructions.

The issue of "commercial reasonableness" was submitted to the jury. The evidence on the various sales was sufficient to submit the question. For example, on the buy-back by General Electric of crated items, this was pursuant to a prior arrangement between General Electric, Jacobson, and the bank. The evidence shows that the best price would be obtained by exercising the option under the agreement. The creditor was not damaged by this sale even though no notice was given. Lori Grosbeck, who was in charge of the business, did have notice and testified that this was the best way to do it and the method which would obtain the best price.

The record shows that the sale of five new uncrated Admiral TV sets was at full invoice price. Exhibit C, invoice No. 34989; 48:20-24; 135:22-25. The date of this sale is not shown by the record but payment of the sale was made in October. This was long after the August notice of sale. The creditor was not hurt by the absence of special notice on this sale.

There is further evidence in the record which supports the conclusion that all the other sales were in a commercially reasonable manner.

The notice of sale dated September 11, 1973, as to the items there specified was at least the equivalent of a notice that the items would be sold privately after 11:59 o'clock a.m., September 15, 1973, and was clearly sufficient as to those items.

The notice of August 10, 1973, was clearly sufficient as a notice of private sale for all merchandise sold thereafter and was the equivalent of a notice that such merchandise would be sold at private sale after 11:59 a.m., August 20, 1973.

The law under the Uniform Commercial Code is just developing in this state. This court has a unique opportunity to see that it develops in a reasonable, just, and logical fashion. I believe we have passed up such an opportunity in this case.

McCown, J., joins in this dissent.