FIRST NATIONAL BANK OF OMAHA, APPELLEE, v. RICHARD G. KIZZIER AND YVONNE A. KIZZIER, ALSO KNOWN AS YVONNE KIZZIER, ET AL., APPELLANTS.

275 N. W. 2d 600

Filed February 20, 1979. No. 41816.

Ross, Schroeder & Fritzler, for appellants.

Donald J. Buresh of Swarr, May, Smith & Andersen, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH and BRODKEY, JJ., and RONIN and NORTON, District Judges.

RONIN, District Judge.

This is an action brought by the First National Bank of Omaha, plaintiff-appellee, to foreclose a mortgage given by Richard G. Kizzier and Yvonne A. Kizzier, defendants-appellants, on real estate in Kearney, Nebraska. In addition to the real estate mortgage, certain promissory notes from the Kizziers to the plaintiff were also secured with personal property in the form of warehouse receipts on foreign bicycles. After the Kizziers had defaulted in payment of the notes, plaintiff sold the bicycles at private sales and thereafter filed this foreclosure action. Kizziers filed an answer and counterclaim to plaintiff's amended petition. After trial, the District Court found generally for the plaintiff and against the defendants and dismissed their counterclaim. The Kizziers appeal. Other named defendants did not appeal. We affirm the judgment of the District Court.

The factual background of this case is this: In

September 1972, one Barbara Werdehoff, with the backing of Richard G. Kizzier, applied to the plaintiff for a loan to finance the importation of foreign bicycles through her corporation, Wheel Imports, Inc. Kizzier had a written agreement with Werdehoff and her corporation that he would lend his credit to this venture in exchange for a commission of $4 for each bicycle imported. Kizzier lent his credit to the bank by signing promissory notes to plaintiff, which generally backed advances made by plaintiff on behalf of Wheel Imports, Inc. to bicycle importers for the purchase of the bicycles. As the notes came due, they were replaced by renewal notes in amounts disbursed by plaintiff plus any unpaid accrued interest.

In April 1973, all of the notes were past due, and the plaintiff gave notice to Kizzier and Werdehoff that it would require additional collateral to renew the line of credit. Kizzier agreed to give a mortgage on real estate, the subject of this action. On April 13, 1973, the evidence shows that plaintiff took two separate notes each for the amount of $153,054.38, the balance due on all the remaining unpaid notes. One note was designated a "collateral note," and the other a "First Mortgage Note." The collateral note was secured by "warehouse receipts on bicycles and real estate note and mortgage signed by Richard G. Kizzier and Yvonne A. Kizzier," husband and wife. The collateral note was actually signed by Wheel Imports, Inc., Werdehoff, and Richard Kizzier and was later extended by an extension agreement by which it became due February 15, 1974.

The second note taken by plaintiff was designated "First Mortgage Note" in the identical amount of $153,054.38, and secured the same indebtedness to plaintiff. This note was signed by both the Kizziers and was secured by the subject real estate mortgage, which is the same mortgage securing the collateral note. This note was extended later to

become due on February 15, 1974.

Later, on October 15, 1973, plaintiff took another note in the sum of $15,000, which was signed by both Kizziers, Werdehoff, and Wheel Imports, Inc., the collateral being the real estate mortgage signed by the Kizziers. The due date on this note was also February 15, 1974. The trial court held in its decree that this note had been paid by credits from the sales of the bicycles and terminated the mortgage lien securing this note.

Late in 1973, Kizzier and Werdehoff negotiated a sale of about 1,200 bicycles with a Chicago firm. The bicycles were shipped to Chicago by rail, but the sale was not effected and the bicycles remained in the railroad car. On February 15, 1974, plaintiff took an unsecured note for $13,923.38 from Richard Kizzier, Werdehoff, and Wheel Imports, Inc., which sum represented expenses in connection with the bicycles and accrued interest on the notes.

On February 25, 1974, plaintiff gave written notice by mail to the defendants Kizziers, Wheel Imports, Inc., and Werdehoff advising them that plaintiff intended to sell the bicycles held as collateral at some private sale after February 28, 1974. Plaintiff shipped the bicycles to Omaha from Chicago. After various conferences with Kizzier, plaintiff sold the bicycles at various private sales from a warehouse from July 18, 1974, through December 1974, receiving the gross amount of $71,277. From this sum, plaintiff paid expenses for the bicycle storage and sales in the sum of $18,581.26, and then the principal and interest on the unsecured note of $13,923.98 of February 15, 1974, and the $15,000 note which became due on February 15, 1974, with the remaining balance of the sales money being applied on the "mortgage note" of $153,054.38, leaving a balance of $151,312.88. On April 15, 1975, plaintiff filed its petition to foreclose the mortgage securing the unpaid "mortgage note."

The defendants Kizziers, in their answer, plead a

lack or failure of consideration of their notes and mortgages, and that there was commercial unreasonableness on behalf of the plaintiff under the Nebraska Uniform Commercial Code. The Kizziers also filed a counterclaim for a judicial release of their mortgage given plaintiff and for their loss for the reason plaintiff did not act in good faith. The trial court decided generally in favor of the plaintiff and against the defendants Kizziers on all issues.

The first contention of the defendants was that the District Court erred in determining the notes and mortgages signed by the Kizziers were supported by adequate consideration.

Comment 2 of the Uniform Commercial Code, section 3-408, explains that: no consideration is necessary for an instrument given as security "for a debt already owed by the party giving it, or by a third person."

Our court has held that consideration is any benefit to the promisor or any detriment to the promisee. Leach v. Treber, 164 Neb. 419, 82 N. W. 2d 544 (1957).

The Kizziers gave their personal note and mortgage on their real estate to secure the collateral note given by Wheel Imports, Inc., and cosigned by Kizzier in order to establish a necessary line of credit with the plaintiff bank for the purchase of foreign bicycles, in which transaction Kizzier had a financial investment. This benefit to Kizzier was consideration for the notes and mortgages sued on in their action.

The District Court properly found in its decree that the "First Mortgage Note" sued on in this action was "evidence of the same indebtedness represented by a certain promissory note, (hereinafter referred to as "collateral note") to plaintiff * * *." We find that all credits which the Kizziers were entitled to were applied on their "First Mortgage Note," and the fact that two notes were executed on April 13, 1973, in the principal amount of $153,054.38 for the

same indebtedness does not render the "First Mortgage Note" invalid by reason of any failure of consideration. No action is pending on the "collateral note."

The second error assigned by the defendants is the finding of the District Court that the plaintiff had given adequate notice of the sale of the personal property collateral, which was the foreign bicycles. The Kizziers contend this foreclosure action is really a suit for a deficiency, that the plaintiff failed to give adequate notice of the private sales of the bicycles and that by reason thereof the foreclosure of the mortgage on their real estate is banned by reason of this court's decisions in DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co., 196 Neb. 398, 243 N. W. 2d 745 (1976); and First Nat. Bank of Bellevue v. Rose, 197 Neb. 392, 249 N. W. 2d 723 (1977). DeLay, *supra*, and Rose, *supra*, involved suits for deficiency judgment against a debtor. The District Court correctly found that the foreclosure action in this case was "not an action for a deficiency judgment against the debtors but a proceeding against collateral pledged by the mortgagor." The only judgment sought by plaintiff in this case was that the mortgage debt be determined and that the real estate be sold and the sale proceeds applied to that debt. No personal judgment against the mortgagors is sought in this foreclosure action after resort to the collateral. Phillips v. Union Central Life Ins. Co., 88 F. 2d 188 (8th Cir., 1937). DeLay and Rose, *supra*, held that failure to give proper notice of the sales of the collateral is a bar to the recovery of a deficiency judgment. See DeLay, p. 402, citing Gering v. Glover, 192 Neb. 575, 223 N. W. 2d 56 (1974), in which no notice was given to the debtor as to the sale of his collateral. Defendants Kizziers seek to extend these holdings not only as to a bar to the recovery of a deficiency judgment, but as to the bar of the recovery of any further collateral without any limitation. We

hold, under the facts in this case, that the plaintiff did proceed in a commercially reasonable manner to liquidate the collateral and that plaintiff was entitled to proceed with the liquidation sale of the mortgage collateral.

The Kizziers claim the notice given to them of the sale of the bicycles, the collateral, was not only a failure to comply with section 9-504 (3), U.C.C., but that it was insufficient to allow them the opportunity to protect their interests. The disposition of collateral securing a note is provided in section 9-504 (3), U.C.C., as follows:

"* * * reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale* or other intended disposition is to be made *shall be sent by the secured party to the debtor*, * * *" (Emphasis supplied.)

The plaintiff mailed its written notice to all the interested defendants on February 25, 1974, (exhibit 23) that plaintiff intended to sell the bicycles on which it held warehouse receipts at some private sale *after* February 28, 1974, unless the notes which were delinquent were paid prior to that date. (Emphasis supplied.)

Before and after the written notice of sale plaintiff mailed to defendants Kizziers, the plaintiff had several telephone conversations with Mr. Kizzier concerning the sale of the bicycles. Plaintiff had negotiated with the Pamida chain through its headquarters in Omaha for the sale of about 1,200 bicycles which had been shipped to Chicago. Plaintiff and Kizzier discussed this sale at Omaha. Kizzier stated that he thought a better price could be obtained and the plaintiff did not complete the sale. Although the notice said the bicycles would be sold at private sale after February 28, 1974, the record discloses that none of the bicycles were sold by plaintiff until July 1974. There were a number of conferences between the plaintiff and Mr. Kizzier

during this 4-month period. Kizzier made no offer to redeem the bicycles. Kizzier suggested the bicycles might be sold through Port-O-Bikes, but when this did not materialize, the plaintiff proceeded to sell the bicycles from the Omaha warehouse. Most of them were sold with the assistance of Jerry Ellis, who was a consultant to Port-O-Bikes and an acquaintance of Kizzier. The bicycles were sold in a series of sales from July through December of 1974.

Our court, in Delay, *supra*, stated that:

"In the case of a private sale, the notice need only state the time after which the collateral is to be sold. In the case of a public sale, however, it must state the time and place at which the sale will occur."

In DeLay, *supra*, our court further stated that the underlying purpose of the written notice requirement was for the protection of the debtor as follows:

"Our first consideration in construing section 9-504 is to consider the reason for the notice provision. Obviously, it is intended for the benefit and protection of the debtor. If he is given notice, he will have at least an opportunity to protect his interests by redemption, finding prospective purchasers for the property, or otherwise."

The Uniform Commercial Code does not provide for any specific number of days that the written notice must have been served on the debtor by the creditor prior to either public or private sale of collateral personal property. The code mandates that the debtor be given a reasonably sufficient time to protect his interest in the collateral. The interpretation given by our court in Rose, *supra*, is that *ordinarily* a minimum of 3 business days is required. The written notice in this case was mailed to Kizzier on February 25, 1974, stating his collateral would be sold at private sale after February 28, 1974, and it is legally sufficient in this case because no sale was held for 5 months as a result of the numerous conferences of the parties. Kizzier was notified in writing

that the bank was going to sell the collateral and every opportunity was given him to redeem or to find prospective purchasers. The purpose of the written notice was to give him a reasonably sufficient time to protect his interest in the collateral. This was fully complied with by plaintiff. The bicycles were sold in various size lots at different times over a period of nearly 5 months. We hold, under the facts in this case, that the plaintiff sustained its burden of proof to prove compliance with the Uniform Commercial Code requirements of notice and reasonableness of notice. Rose, *supra.*

The Kizziers further contend there was commercial unreasonableness in the sale price and expenses in the disposition of the bicycle collateral by the plaintiff. The record discloses there was a total of 2,448 bicycles purchased by Wheel Imports, Inc. on plaintiff's credit. The plaintiff released 522 bicycles to Wheel Imports, Inc. and purchasers from where they were stored in a New Jersey warehouse. Some of these bicycles were used for demonstration or other sale purposes. The plaintiff received about $13,000 for them, which sum has been credited on the defendants' mortgage notes. Thirty-eight bicycles were unaccounted for by the warehouse and were not released by plaintiff. These transactions occurred prior to any default on the mortgage notes and prior to the time plaintiff repossessed the bicycles.

Plaintiff repossessed the bicycles on February 25, 1974, by reason of its written notice to all defendants of its intention to sell the collateral, and it had the bicycles moved by rail to a railroad siding in Chicago. Sixty-five bicycles were stolen there. The District Court properly disallowed plaintiff's contention that this loss should be charged to the defendants, and credited the Kizziers in the sum of $2,600, the value of the 65 bicycles, against their mortgage debt for the reason that the theft occurred subse-

quent to the time that plaintiff had repossessed them. Credit was also given Kizziers in the sum of $1,200 for 40 bicycles still in plaintiff's possession at the time of trial.

The total proceeds of the series of bicycle sales at the Omaha warehouse was $71,277 with expenses of $18,581.26. Most of the expenses included the demurrage expense incurred at Chicago and shipping and storage expenses. The District Court rejected the defendants' contention that plaintiff should have sold bicycles on credit terms to secure a higher price which would have also reduced the sale expense. The District Court approved generally the prices obtained and the expenses incurred in the sales of the bicycle collateral. The District Court correctly held that the plaintiff wrongfully applied collateral sale proceeds in payment of the unsecured note of the defendants dated February 15, 1974, in the principal sum of $13,923.38, and ordered that the principal and interest thereof be applied instead on the Kizzier "First Mortgage Note." The payment of the $15,000 note of the defendants dated February 15, 1974, from the proceeds of the collateral sales, was approved by the District Court for the reason that it was also secured by the mortgage on the Kizzier tract and the mortgage lien of this note was ordered released by reason of payment.

The District Court computed the balance of the mortgage debt of the "First Mortgage Note" of Kizziers to the plaintiff to be $127,425.58 as of March 26, 1975, as itemized on page 19 of plaintiff's brief, and ordered said balance to receive interest from that date at 9 percent per annum, and that the counterclaim of the Kizziers be dismissed.

The record fully supports the findings of the District Court that the notes and mortgages were given by the Kizziers to the plaintiff for valuable consideration; that after defendants defaulted in payment of their notes, the plaintiff gave written notice by

letter, dated February 25, 1974, to all defendants of its intention to sell the bicycles at private sale after February 28, 1974, and that the written notice complied with the Uniform Commercial Code under the facts of this case; that the plaintiff disposed of the bicycle collateral in a commercially reasonable manner as adjusted and determined by the District Court; that the amount of the mortgage debt of the defendants to the plaintiff was correctly computed; that by reason of the aforesaid findings the counterclaim of the defendants was dismissed; and that the decree of foreclosure entered by the District Court is, in all respects, approved.

The judgment of the District Court is affirmed.

AFFIRMED.